## IN THE UNITED STATES DISTRICT COURT FOR
## THE MIDDLE DISTRICT OF ALABAMA

JEREMIAH W. GREEN, #11165-171
**Full name and prison number
of plaintiff(s)**

v.

THE ELMORE COUNTY JAIL, ET AL

_____

_____

_____

_____

**Name of person(s) who violated
your constitutional rights.
(List the names of all the
persons.)**

2006 JUL 26  A 9: 38

2:06cv667-WKW

CIVIL ACTION NO. ~~2:06cv667-WKW~~
(To be supplied by Clerk of
U.S. District Court)

**DEMAND FOR JURY TRIAL**

I.   PREVIOUS LAWSUITS
    A.   Have you begun other lawsuits in state or federal court
        dealing with the same or similar facts involved in this
        action?  YES ( XX )  NO (   )

    B.   Have you begun other lawsuits in state or federal court
        relating to your imprisonment?  YES ( XX )  NO (   )

    C.   If your answer to A or B is yes, describe each lawsuit
        in the space below.  (If there is more than one lawsuit,
        describe the additional lawsuits on another piece of
        paper, using the same outline.)  ONE ADDITIONAL PAGE ATTACHED

        1.   Parties to this previous lawsuit:

            Plaintiff(s) JEREMIAH W. GREEN, #11165-171

            Defendant(s) THE ELMORE COUNTY JAIL, ET AL

        2.   Court (if federal court, name the district; if
            state court, name the county) _____

            NORTHERN DISTRICT OF GEORGIA - ATLANTA DIVISION

3.   **Docket number** 1 06-CV-1426-JTC

4.   **Name of judge to whom case was assigned** _____

US DISTRICT JUDGE JACK T. CAMP

5.   **Disposition (for example:  Was the case dismissed? Was it appealed?  Is it still pending?)** _____

DISMISSED WITHOUT PREJUDICE - FOR VENUE

6.   **Approximate date of filing lawsuit** JUNE 18, 2006

7.   **Approximate date of disposition** JULY 19, 2006

II.  **PLACE OF PRESENT CONFINEMENT** FEDERAL PRISON CAMP ATLANTA

POST OFFICE BOX 150160, ATLANTA, GA 30315-0160

**PLACE OR INSTITUTION WHERE INCIDENT OCCURRED** _____

THE ELMORE COUNTY JAIL, WETUMPKA, ALABAMA

III. **NAME AND ADDRESS OF INDIVIDUAL(S) YOU ALLEGE VIOLATED YOUR CONSTITUTIONAL RIGHTS.**

      **NAME**               **ADDRESS**

1.   WARDEN AJA ROBERTS, 8955 US HIGHWAY 231, WETUMPKA, AL 36092

2.   CORRECTIONS OFFICERS - JOHN, JACK, JIM & JANE DOE - SAME ADDRESS

3.   COUNTY ATTORNEY - JOHN DOE - ADDRESS UNKNOWN

4.   THE ELMORE COUNTY JAIL - SAME ADDRESS AS WARDEN

5.   _____

6.   _____

IV.  **THE DATE UPON WHICH SAID VIOLATION OCCURRED** _____

FEBRUARY 21 - 22, 2006

V.   **STATE BRIEFLY THE GROUNDS ON WHICH YOU BASE YOUR ALLEGATION THAT YOUR CONSTITUTIONAL RIGHTS ARE BEING VIOLATED:**

**GROUND ONE:** RIGHT TO PRIVACY (H.I.P.P.A.)

_____

2

**STATE BRIEFLY THE FACTS WHICH SUPPORT THIS GROUND.  (State as best you can the time, place and manner and person involved.)**

PLEASE SEE ATTACHED BRIEF AND MEMORANDUM OF LAW

**GROUND TWO:**  ADA VIOLATIONS

**SUPPORTING FACTS:**  PLEASE SEE ATTACHED BRIEF AND MEMORANDUM OF LAW

**GROUND THREE:**  CRUEL AND UNUSUAL PUNISHMENT

**SUPPORTING FACTS:**  PLEASE SEE ATTACHED BRIEF AND MEMORANDUM OF LAW

VI.  **STATE BRIEFLY EXACTLY WHAT YOU WANT THE COURT TO DO FOR YOU. MAKE NO LEGAL ARGUMENT.  CITE NO CASES OR STATUTES.**

PRELIMINARY & PERMANENT INJUNCTIVE RELIEF, COMPENSATORY,

PUNITIVE & NOMINAL DAMAGES, PLAINTIFF'S COSTS OF THIS SUIT,

A JURY TRIAL AND ANY ADDITIONAL RELIEF THIS COURT DEEMS JUST.

Signature of plaintiff(s)

JEREMIAH W. GREEN, #11165-171

I declare under penalty of perjury that the foregoing is true and correct.

EXECUTED on  JULY 24, 2006             .
(Date)

Signature of plaintiff(s)

JEREMIAH W. GREEN, #11165-171

4

SECTION I – PREVIOUS LAWSUITS (Continued)

JEREMIAH W. GREEN, PLAINTIFF

v.

WARDEN MICHAEL ZENK, DEFENDANT

IN THE NORTHERN DISTRICT OF GEORGIA – ATLANTA DIVISION

DOCKET: 1 06-CV-1231-JTC

US DISTRICT JUDGE JACK T. CAMP and E. CLAYTON SCOFIELD, III

DISPOSITION – STILL PENDING

DATE FILED:  MAY 22, 2006

SECTION III – NAME AND ADDRESS OF INDIVIDUAL(S) ALLEDGED TO
                HAVE VIOLATED MY RIGHTS

WARDEN MICHAEL ZENK – 601 MCDONOUGH BLVD, SE, ATLANTA, GA 30315

SECTION IV – DATE OF VIOLATION

BEGINNING FEBRUARY 23, 2006 to PRESENT

SECTION V – GROUNDS

CONDITIONS OF CONFINEMENT, REGARDING CCC DESIGNATION AND
PLACEMENT BY THE BOP.

THE INTENT OF 18 U.S.C. §3621(b) and §3624.

*Jeremiah W. Green*

7/24/06

IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA

Jeremiah W. Green                          Case No: 2:06cv0667·WKW

        Plaintiff

        v.                                 Magistrate:

                                           District Judge:

The Elmore County Jail, Defendant # 1,
Warden Aja Roberts, Defendant # 2,
Correctional Officers;
John Doe, Defendant # 3,
Jack Doe, Defendant # 4,                   **DEMAND FOR JURY TRIAL**
Jim  Doe, Defendant # 5,
Jane Doe, Defendant # 6,
County Attorney, John Doe, Defendant # 7;
Warden, all Doe Defendants, and the
County Attorney, are named individually,
and in their official capacities.

---

STATEMENT OF CLAIM

[42 U.S.C. §1983, §1985, 12100 et. seq.]
[28 U.S.C. §1331, §1343, §1391 (b) (2)]

Now Comes the Plaintiff, PRO SE, and states;

1.  That this is a civil action authorized by 42 United States Code, Section
1983, 1985, and 12100 et. seq., to redress the deprivation of rights secured
by the Constitution of the United States.  That the deprivation was caused,
and is still continuing to be caused by those acting under Color of State Law,
and conspiring to Act under Color of State Law.

2.  Jurisdiction is authorized under 28 United States Code, Section §1331,
a Federal Question.  Additional jurisdiction is authorized under §1343, a Civil
Rights deprivation.

3.  Venue is authorized by §1391 (b)(2) a judicial district in which a
substantial part of the events giving rise to the claim occurred.

4.  Any administrative remedies that might have been required under the
Prisoner Litigation Reform Act have been exhausted.  Plaintiff was in custody

---1---

at the Elmore County Jail, for a twenty four (24) hour period, so that there was no possible way to exercise "administrative remedies". Plaintiff will detail supporting case law, allowing for the failure to exhaust administrative remedies not being "fatal" to a Plaintiff's claim.[1]

5. Plaintiff asserts that this is an action for;

a. A Preliminary, and Permanent Injunction to ensure that Defendant's atrocities shall not continue;

b. Compensatory Damages;

c. Punitive Damages;

d. Fees of filing, and all costs associated with the preparation therein.

## PARTIES

6. Plaintiff was a resident of the Elmore County Jail, for one (1), twenty four (24) hour period and has since that time been a resident of the Atlanta Federal Prison Camp, located in Atlanta, Georgia.

7. Defendant, The Elmore County Jail, at all times pertinent herein, was an agency acting under Color of State Law, by and behalf of the United States Federal Bureau of Prisons.

8. Warden Aja Roberts, Defendant Number 2, at all times pertinent herein, was an agent of the United States, acting under Color of Law.

9. Defendants, numbered 3, through 6, John, Jack, Jim and Jane Doe, at all times pertinent herein were agents of the Elmore County Jail, acting under Color of Law.

10. Defendant Number 7, County Attorney, John Doe, was at all times pertinent herein, responsible for the promulgation of policies, customs, and practices that the Elmore County Jail did enforce.

---

[1] Please see attached Memorandum of Law regarding exhaustion of remedies.

11.  Each Defendant is sued individually and in his or her official capacity.  At all times pertinent herein, Defendants acted under Color of Alabama State Law, and were agents acting under Color of Law for the Federal Bureau of Prisons.

## BACKGROUND

12.  Plaintiff realleges and incorporates by reference paragraphs, 1 through 11.

13.  On or about February 21, 2006, as a Federal Bureau of Prisons inmate, Plaintiff occasioned to be transferred from Federal Prison Camp, ("FPC"), Montgomery, located at Maxwell Air Force Base in Montgomery, Alabama to FPC Atlanta.

14.  Transport officer from Montgomery FPC, delivered Plaintiff to the Elmore County Jail, located in Wetumpka, Alabama.

15.  Upon arrival at Elmore, the Receiving and Discharge Corrections Officer, inquired as to why Plaintiff was being transferred to FPC Atlanta. Receiving and Discharge is known as ("R and D").

16.  Plaintiff advised the R and D, Corrections Officer, ("C.O.") that FPC Montgomery, is not medically equipped to resolve "chronic" care patients/ inmates, and FPC Atlanta, a "medical" facility has such plant and personnel to mitigate the chronic care of inmates.

17.  Plaintiff suffers from a chronic illness, affecting Plaintiff's ability to defend against infections, and or disease.  Plaintiff's disorder is referred to as HIV (Human Immunodeficiency Virus), more commonly known as "AIDS" (Acquired Immune Deficiency Syndrome).

18.  Upon advising the R and D Officer, in an honest and straightforward manner as to Plaintiff's medical disorder, the R and D Officer, known only to

Plaintiff at this time as John Doe, Defendant Number 3, consulted with his superior.

19. The next C.O., one level up in the chain of command, is only known to Plaintiff as Jack Doe, Defendant Number 4.

20. John Doe, the R and D Officer, after completing the conversation and consultation with Jack Doe, the superior proceeded to direct the Plaintiff to "dress out".

21. Dressing out is a ritual among arrivals at any penological institution. Inmates are clothed in a consistent manner, with similarly styled, and similarly colored clothing.

22. The science of penology, bases such decisions on a myriad of factors, specifially so that no inmate will be "singled out" as "different" among other inmates.[2]

23. The predatorial environment of violent felons in a penological setting is minimized by the "similar clothing and dress" used in jails, correctional facilities, and penological institutions.

24. Irrespective of this decades long commitment to the safety and "normality" among inmates, Plaintiff was dressed in a scarlet red set of medical "scrubs", and a pair of "throw away" slippers.

25. Unknown at that time to Plaintiff, was that Plaintiff had been dressed to single the Plaintiff out, to achieve a distinct difference between inmates, and to ostracize.

26. Plaintiff was not aware of his "difference" until Plaintiff entered the living area, and was confronted by 20 plus inmates, all who were dressed in typical jail "orange" cloth uniforms.

27. Prior to entering the dormitory where Plaintiff was required to live among 20 plus pre-trial detainees, and convicted criminals. Plaintiff

---

[2] See BOP Program/Policy Statement 6190.03 Page 13, attached as Exhibit A.

was supplied an insulated "thermos/cooler". The thermos had the words "Black Tie" written all over it, with iconic drawings of black bowties upon the thermos.

28. Upon entering the dormitory area, the purpose of the scarlet red medical scrub outfit, and the "black tie" thermos became agonizingly clear to Plaintiff. As Plaintiff entered, the "buzz" was immediately about Plaintiff's scarlet red clothing, and Plaintiff's "Black Tie" beverage container.

29. Further to the degradation, and the instantaneous danger Plaintiff was subjected to, as if the red medical outfit and cooler were not harmful enough, Plaintiff was forbidden to drink from the communal water supply.

30. Plaintiff was forbidden to have a cell mate, irrespective of the fact that all other inmates had a "cellie" or person sharing the cell, one with another.

31. The first interface with other inmates, began with the encroachment of inmates who stood at the door of Plaintiff's cell, and inquired as to why Plaintiff was carrying a "Black Tie" cooler, and was dressed in red medical scrubs.

32. Plaintiff was petrified, and did not know how to answer. Irrespective of the fact that jails, and correctional facilities have C.O.'s that have a responsibility to secure the safety of inmates, Plaintiff knew from a previous experience that potentially fatal and/or violent events occur.

33. Not knowing what else to do, and in a position of fear for his life, Plaintiff lied. Plaintiff told the inmates who were congregating near his door, like a group of predators, that Plaintiff had a bad cold.

34. They knew better. Plaintiff was now to be known as a liar, as well as they so aptly described Plaintiff, a "Fag with AIDS". The inmates knew that the jail had a policy of singling out those with AIDS, placing those

inmates with AIDS in red medical scrubs and forcing them to drink from the "Black Tie" thermos/cooler.

35. The Corrections Officers acted as though this horrific atrocity was humorous.

36. Dinner time arrived, and the ostracization became worse. Plaintiff was fed on a tray for those with "Black Tie". Plaintiff felt that when the Corrections Officer described him, with "Black Tie" they were describing the Plaintiff as though he had the black plague.

37. Plaintiff's dinner tray, had black bowties, drawn all over it. Plaintiff was provided a disposable spoon, while all other inmates had regular eating utensils. Plaintiff was provided a clear garbage bag to place his food tray into when Plaintiff had "finished dinner".

38. This event, surrounding the dinner presentation was recreated exactly the same way, at the next meal. This is the common custom, practice and policy of the Elmore County Jail.

39. To try to ensure Plaintiff's safety, Plaintiff remained in his cell for the duration of the confinement at the Elmore County Jail.


## LEGAL CLAIMS

40. Plaintiff realleges and incorporates by reference paragraphs, 1 through 39.

41. The blatant discrimination, the violation of Plaintiff's rights to safe and secure confinement, the violation of Plaintiff's right to privacy, and the violation of Plaintiff's right to be treated equally under the ("A.D.A"), Americans with Disabilities Act, have all occurred during the aforementioned events. There is no possible redress for the violations of Plaintiff's Constitutional Rights, against cruel and unusual punishment, other than this instant action in equity.

42. There is no plain, adequate or complete remedy, irrespective of this action in equity, to remedy the wrongs that have occurred, and continue to occur at the Elmore County Jail.

43. Plaintiff was irreparably harmed by the custom, practice and policy of the Elmore County Jail. Plaintiff may be further harmed by the continuing custom, practice and policy of the Elmore County Jail. Current and future inmates, with the same medical disability as Plaintiff will continue to be harmed, without adequate relief from this Court.

44. Without declaratory and injunctive relief from this Honorable Court, such irreparable harm will continue to occur.

### PRAYER FOR RELIEF

WHEREFORE, Plaintiff respectfully prays that this Court enter judgment granting Plaintiff;

45. A declaration that the acts and omissions described herein, violated Plaintiff's rights under the Constitution and laws of the United States.

46. A preliminary and permanent injunction ordering Defendant's from singling out, ostracizing and allowing very private medical information, protected by the Health Information Patient Portability Act ("H.I.P.P.A.") and other Civil Rights violations to occur.

47. Compensatory damages, in the amount of not less than $10,000,000.00 (Ten Million Dollars) against Defendant's, jointly and severally.

48. Punitive damages, against Defendant's, jointly and severally, to be determined at trial by jury.

49. A jury trial on all triable issues.

50. Plaintiff's costs for this suit.

51. Any additional relief this Court deems just, proper, and equitable.

Respectfully submitted this <u>24th</u> day of July, 2006.

Jeremiah W. Green, Plaintiff, PRO SE
USMS Reg. NO. 11165-171
Federal Prison Camp Atlanta
Post Office Box 150160
Atlanta, Georgia 30315-0160

### UNSWORN DECLARATION UNDER PENALTY OF PERJURY

I, Jeremiah W. Green, Plaintiff, declare under penalty of perjury under the laws of the United States of America, that the foregoing is true and correct to the best of my knowledge.

Jeremiah W. Green, Plaintiff, PRO SE

Signed this <u>24th</u> day of July, 2006.

IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA

Jeremiah W. Green

        Plaintiff

        v.

The Elmore County Jail, et al

        Defendant(s)

Case No: 2:06cv667-WKW

Magistrate Judge:

District Judge:

### AFFIDAVIT IN SUPPORT OF STATEMENT OF CLAIM

I, Jeremiah W. Green am the Plaintiff in the above styled case, and case number and therefore have detailed knowledge as to the events and occurrences contained within the attached Statement of Claim and I assert;

1. That on February 21st and 22nd 2006, I was an inmate at the Elmore County Jail.

2. That the assertions I have made in the attached instant Statement of Claim are true and correct to the best of my knowledge and recollection.

3. That upon my arrival at the Elmore County Jail, I was not informed as to the grievance procedure, nor was I provided an inmate handbook explaining the grievance process. Such requirements are codified in the Code of Federal Regulations.

4. That on May 08, 2006, I sent a letter via Certified U.S. Mail to Warden Aja Roberts, regarding triggering the first tier of the grievance process. Such contact was not acknowledged, nor was the follow-up letter mailed on May 23, 2006.

5. That it is impossible for an inmate to exhaust administrative remedies when the facility provides no documentation, nor oral explanation, and or directions for the grievance program. Further, that an inmate who has been incarcerated at a facility, and is no longer in that facility, Plaintiff asserts, cannot and should not be required to exhaust such remedies.

Under penalty of perjury, I affirm that the above affidavit is for the purposes of supporting my 42 U.S.C. §1983 claim and for no other purpose whatsoever.

Further affiant sayeth naught.  Signed this 24th day of July, 2006.

Jeremiah W. Green, Plaintiff, **PRO SE**

P6190.03
6/28/2005
Page 13

Inmates with infectious diseases that are not foodborne or transmitted by casual contact; i.e., HBV, HCV, HIV, are not prohibited from assignment to Food Service based solely upon the diagnosis of the infectious disease. The primary care provider will determine the inmate's suitability for Food Service.

[c. **If an inmate tests positive for an infectious disease, that test alone does not constitute sole grounds for disciplinary action. Disciplinary action may be considered when coupled with a secondary action that could lead to transmission of an infectious agent. Inmates testing positive for infectious disease are subject to the same disciplinary policy that applies to all inmates (see 28 CFR 541, subpart B). Except as provided for in our disciplinary policy, no special or separate housing units may be established for HIV-positive inmates.]**

In addition to standard precautions, all institutions will utilize appropriate transmission-based **precautions**, such as:

- airborne precautions for small particle organisms;
- droplet precautions for large particle organisms; and
- contact precautions for direct skin-to-skin touching or when indirect spread may occur.

Necessary containment measures will be used to transport, isolate, restrict contact of inmates with potentially communicable disease, until no longer contagious.

- Only those institutions equipped with the proper engineering controls to house inmates in a negative pressure isolation room (NPIR) that comply with the current CDC recommendations, have the option to isolate and treat inmates with suspected TB **or** other airborne disease (requiring airborne precautions) that may remain suspended in the air and be spread by casual contact.

- Refer to Section 11, for NPIR controls under engineering controls and personal protective equipment (PPE). Otherwise, arrangements will be made to transport the inmate to the local hospital with the necessary facilities to isolate and treat until the inmate is no longer contagious.

"EXHIBIT A" - Page One

## §549.10

### Subpart C—Administrative Safeguards for Psychiatric Treatment and Medication

549.40  Use of psychotropic medications.
549.41  Voluntary admission and psychotropic medication.
549.42  Involuntary admission.
549.43  Involuntary psychiatric treatment and medication.

### Subpart D—Plastic Surgery

549.50  Purpose and scope.
549.51  Approval procedures.
549.52  Informed consent.

### Subpart E—Hunger Strikes, Inmate

549.60  Purpose and scope.
549.61  Definition.
549.62  Initial referral.
549.63  Initial medical evaluation and management.
549.64  Food/liquid intake/output.
549.65  Refusal to accept treatment.
549.66  Release from treatment.

### Subpart F  [Reserved]

### Subpart G—Authority to Conduct Autopsies

549.80  Authority to conduct autopsies.

AUTHORITY: 5 U.S.C. 301; 18 U.S.C. 3621, 3622, 3624, 4001, 4005, 4042, 4045, 4081, 4082, (Repealed in part as to offenses committed on or after November 1, 1987), 4241-4247, 5006-5024 (Repealed October 12, 1984, as to offenses committed after that date), 5039; 28 U.S.C. 509, 510; 28 CFR 0.95-0.99.

### Subpart A—Infectious Diseases

SOURCE: 60 FR 52279, Oct. 5, 1995, unless otherwise noted.

#### §549.10  Purpose and scope.

This policy is designed to provide instruction and guidance in the management of infectious diseases in the confined environment of a correctional setting.

#### §549.11  Program responsibility.

(a) The Health Services Administrator (HSA) and Clinical Director (CD) of each institution shall be responsible for the development and implementation of this program.

(b) Each HSA shall designate a member of the clinical health care staff, for example, a physician, dentist, physician assistant, nurse practitioner, or

---

## 28 CFR Ch. V (7-1-01 Edition)

nurse, as the Coordinator of Infectious Diseases (CID).

#### §549.12  Reporting.

The HSA shall ensure that each institution's respective state health department is informed of all cases of reportable infectious diseases. See §549.17 for reporting requirements of chronic infectious diseases and for Freedom of Information Act requests.

#### §549.13  Medical testing.

(a) *Bloodborne pathogens.* Following an incident in which a staff member or an inmate may have been exposed to bloodborne pathogens, written, informed consent shall be obtained prior to acquiring or processing the source individual's blood or other biological specimen for the purpose of determining an actual exposure to a bloodborne pathogen. In the context of exposure incidents, no inmate shall be tested forcibly or involuntarily, unless such testing is ordered by a court with proper jurisdiction. Inmates may be subjected to disciplinary action for assaultive behavior related to an exposure incident.

(b) *HIV testing.* HIV testing programs are mandatory and include a yearly random sample, yearly new commitment sample, new commitment re-test sample, pre-release testing, and clinically indicated testing. Inmates must participate in all mandatory testing programs. Staff shall initiate an incident report for failure to follow an order for any inmate refusing one of the mandatory HIV testing programs.

(c) *Diagnostics.* (1) An inmate who refuses clinically indicated diagnostic procedures and evaluations for infectious and communicable diseases shall be subject to an incident report for failure to follow an order. Involuntary testing subsequently may be performed in accordance with paragraph (c)(3) of this section.

(2) Any inmate who refuses clinically indicated diagnostic procedures and evaluations for infectious and communicable diseases shall be subject to isolation or quarantine from the general population until such time as he/she is assessed to be non-communicable and the attending physician determines the

---

## Date:
## Bureau of Prisons, Justice

inmate poses no health threat if remitted to the general population.

(3) If isolation is not practicable, an inmate who refuses to comply with or adhere to the diagnostic process or evaluation shall be involuntarily evaluated or tested.

#### §549.14  Training.

The HSA shall ensure that a qualified health care professional provides training, incorporating a question-and-answer session, about infectious diseases to all newly committed inmates, during Admission and Orientation (A&O). Additional training shall be provided at least yearly.

#### §549.15  Medical isolation and quarantining.

(a) The CD, in consultation with the HSA, shall ensure that inmates with infectious diseases which are transmitted through casual contact (e.g., tuberculosis, chicken pox, measles) are isolated from the general inmate population until such time as they are assessed or evaluated by a health care provider.

(b) Inmates shall remain in medical isolation unless their activities, housing, and/or duty assignments can be limited or environmental/engineering controls or personal protective equipment is available to eliminate the risk of transmitting the disease.

#### §549.16  Duty and housing restrictions.

(a) The CD shall assess any inmate with an infectious disease for appropriateness for duties and housing. Inmates demonstrating infectious diseases, which are transmitted through casual contact, shall be prohibited from employment in any area until fully evaluated by a health care provider.

(b) Inmates may be limited in duty and housing assignments only if their disease could be transmitted despite the use of environmental/engineering controls or personal protective equipment, or when precautionary measures cannot be implemented or are not available to prevent the transmission of the specific disease. The Warden, in consultation with the CD, may exclude inmates, on a case-by-case basis, from work assignments based

---

## §549.18

sification of the institution and the safety and good order of the institution.

(c) With the exception of the Bureau of Prisons version set forth in subpart E of 28 CFR part 541, there shall be no special housing established for HIV-positive inmates.

#### §549.17  Confidentiality of information.

(a) Medical information relevant to chronic infectious diseases shall be limited to members of the institutional medical staff, institutional psychologist, and the Warden and case manager, as needed, to address issues regarding pre- and post-release management. Prior to an inmate's release, medical information may be shared with a United States Probation Officer in the respective area of intended release for the inmate and, if applicable, with the Community Corrections Manager and the Director of the Community Correctional Center (CCC) for purposes of post-release management and access to care. Any other release of information shall be in accordance with the Privacy Act of 1974.

(b) All parties, with whom confidential medical information regarding another individual is communicated, shall be advised not to share this information, by any means, with any other person. Medical information may be communicated among medical staff directly concerned with a patient's case in the course of their professional duties.

#### §549.18  Human immunodeficiency virus (HIV) and hepatitis B virus (HBV).

(a) During routine intake screening, all new commitments shall be interviewed to identify those who may be HIV- or HBV-infected.

(b) A seropositive test result alone may not constitute grounds for disciplinary action. Disciplinary action may be considered when coupled with a secondary action that could lead to

---

"EXHIBIT A" – Page Two

194-102  D-01-19

.remiah W. Green, Reg. No. 1116_ .71
**Federal Prison Camp Atlanta**
**Post Office Box 150160**
**Atlanta, Georgia 30315-0160**

May 08, 2006

Elmore County Jail
Attn: Aja Roberts, Warden
8955 US Highway 231
Wetumpka, Alabama 36092

RE:   Jeremiah W. Green
      USMS Reg. No. 11165-171

Certified US Mail, R.R.R., No. 7003 1680 0005 1212 3061

Dear Warden Aja Roberts,

I contact you for the express purpose of providing to you, the County of Elmore, and the Corrections Officers, an opportunity to modify the custom, practice and policy of the Elmore County Jail. In complying with the Prisoner Litigation Reform Act, ("PLRA"), I am of the opinion that due to the single night stay I had as a BOP remand, inmate, that such administrative remedy exhaustion as required is irrelevant. I make that claim for several reasons, none of which are germane for purposes of this letter. What is important is that you are made very clear, that;

1.  I require for my records an inmate handbook from the Elmore County Jail, for a record of the administrative remedy exhaustion process under Alabama State law.

2.  That failure to settle the damages incurred by me on February 21, 2006 and February 22, 2006, I will be suing for, preliminary and permanent injunctive relief for all inmates situated such as me, now and in the future, to avoid the barbaric, puritanical, and parochial treatment of all HIV/AIDS infected inmates,

3.  Compensatory Damages, and                    "EXHIBIT B" - Eight Pages

4.  Punitive Damages.

The single available option to avoid this action is;

1.  An immediate settlement to cease and desist such treatment of HIV/AIDS

infected inmates, now and in the future;

2. Compensatory Damages of $1,000,000.00 (One Million Dollars) for the violation of my clearly protected Civil Rights;

3. Costs of this action to date.

I am enclosing a copy of the statement of claim, being finalized. The single reason you are not being served by the U.S. Marshal Service, as directed in 28 USC §1915, is that I am cautiously "exhausting such remedies as are available under 42 USC §1997e(a)". Case law follows, with my commentary.

I am, with the notification of this letter, requesting that this contact be considered the "first tier" of the grievance process. Candidly, I am quite sure that I will receive no resolution of my grievance, but as discussed in Green v. Meese, 875 F. 2d 639, 641 (7th Cir. 1989), and quoted in Alexander v. Hawk, 159 F 3d @1325 (11th Cir. 1989), in a Federal Bureau of Prisons, Bivens action;

> No doubt denial [of my grievance] is the likeliest outcome but that is not sufficient reason for waiving the requirement of exhaustion. Lightening may strike; and even if it doesn't, in denying relief the Bureau may give a statement of it's reasons that is helpful to the district court in considering the merits of the claim.

Fortuitously, as an inmate transferred to the Elmore County Jail, as a Federal Bureau of Prisons ("BOP") inmate in holdover, this issue has been clearly resolved by the largest of all "jailers" in America, the BOP.

In the Policy/Program Statement BP 6190.03 Page 13, the BOP clearly states;

> **[Except as provided in our disciplinary policy, no special or separate housing units may be established for HIV-positive inmates.]**
> (Bold was not added for effect, Bold was used in the Statement)

Further to pointing out to the Elmore County Jail, the policy, custom and practices, that were contemporaneous at Plymouth Rock with the arrival of the Puritans in 1620, nearly 400 years ago, and the murder and banishment of "witches", so the tradition continues at the Elmore County Jail. Faggots with HIV/AIDS, rather than suffer the damages I incurred, might as well be burned

at the stake in Alabama. That is the origination of the term faggot, ironically enough. However, this is not 1680, Salem, Mass. This is the United States of America, and the year is 2006.

The issue has been resolved for nearly two decades among any forward thinking penological institutions, of those with even a modicum of profess-ionalism. Pointing to Federal documents, I rely first on the pamphlet, printed in 1988, and sent to every American household.[1] Why would the Federal government go to such an expense to advise, inform, and enlighten those literate enough to read the brochure? So that the country would understand this syndrome. So the country would be empowered to realize and understand that HIV/AIDS cannot be caught from a toilet seat, from sharing food with a FAG, by kissing, by sharing a community cooler. In fact, not a single concern of the facility, addressing the ignorance of staff and inmates, in the Elmore County Jail, was valid. For no penological purpose was I provided a thermos/cooler with the words "Black Tie" and iconic black bowties drawn onto the surface. For no penological purpose was I provided a tray, containing the same drawings, that was to be placed in a clear plastic bag after I used such tray. For no penological purpose purpose was I placed in "scarlet red" medical scrubs, when all the other inmates were given orange outfits. For no penological purpose was I singled out among a group of predatorial, potentially violent felons, for the purpose of "keeping them from catching AIDS". It is my assertion and my responsibility to prove that the Elmore County Jail, in it's perpetuation of ignorance, and prejudice, did violate my rights and do so for absolutely no penological purpose.

---

[1] United States Department of Health and Human Services, Pub. No. (CDC) HHS 088-0404, "Understanding AIDS", P. 2 (1988) - <u>Glick v. Henderson 855 F.2d 536, 539</u>. Attached as exhibit "A"

---3---

The concept of this litigation is that my rights as an inmate to privacy, and to safe and secure surroundings have been clearly violated. That such violations were declared unlawful by the Civil Rights Act of 1871, also known as a §1983 violation. That further violations have occurred by the Jail, in violating the Americans with Disabilities Act ("A.D.A."), 42 USC 12100 et. seq. That as far back as 1988, the Federal government spent an incredible sum to send a pamphlet, exposing the ignorance of those in the United States to the methods of "catching" the HIV/AIDS virus. This pamphlet has been referred to heretofore in this correspondence. Further to support of the anachronistic and unlawful custom, practice and policy of the Elmore County Jail, is the 1992 lawsuit in the Western District of New York, citing Nolley v. County of Erie 802 F. Supp. 898 (W.D.N.Y. 1992). Annotations of the Nolley case, suggest that punitive damages were awarded for "unwarranted disclosure of HIV-positive status" in violation of privacy rights, segregation based upon her HIV status. In Nolley, the "red sticker" policies violated plaintiff's Constitutional Right to privacy under 42 USC §1983, Nolley 776 F. Supp. @ 743. I would remind the Defendant's that the Elmore County Jail, did not have a "red sticker" policy on medical records, the Elmore County Jail, dressed, and dresses and will continue to dress out, inmates in "red medical scrub outfits", without the intervention by a court, unless the Defendants are amenable to an immediate policy change. Defendants may raise a defense, that "red medical scrub outfits" are used for any communicable disease. This defense was raised in the Nolley case, and as such being decided by Judge Curtin, we quote the New York law, regarding this issue;

> "Confidential HIV-related information" means any information, in the possession of a person who provides health or social services or who obtains the information pursuant to a release of confidential HIV-related information concerning whether an individual has been the subject of an HIV-related test, or has HIV infection, HIV-related illness or AIDS, **or information which identifies or reasonably could identify an individual as having one or more conditions, including information pertaining to such conditions,** including information pertaining to such individuals contacts. (N.Y.C.R.R. §7064.2(g))

Thus, pursuant to the COC regulations, if the placement of a red sticker on an inmate's documents and other items identified or "reasonably could [have] identif[ied] an individual" as being HIV-positive, their HIV confidentiality would have been breached.

This is exactly what occurred at the Elmore County Jail. I was placed in a "red medical scrub outfit". I was ostracized from the group, yet still accessible for potential violent offenders who might choose to "beat the queer out of me". Whether I was required to wear a placard around my neck saying "I am a fag with AIDS", or wear a scarlet outfit, I was made to be clearly known to the group as a "FAG with AIDS".

Clearly established law, tells the State of Alabama, and the County of Elmore that this behavior by the customs, policies and practices is unlawful. That the County Attorney who is responsible for promulgation of such regulations, is personally responsible for such customs, practices and policies. That Warden Aja Roberts is personally responsible for the enforcement of such municipal customs, practices and policies. That the Corrections Officers being untrained in communicable diseases, by the community was personally responsible for the enforcement of such anachronistic customs, practices and policies, knowing fully well that such treatment of an inmate, in the 21st Century, in the United States of America must be unlawful.

**Is an award appropriate even in the absence of physical injury?** I cite Daskalea v. District of Columbia 227 F. 3d 433 @ 444 (D.C. Cir. 2000), quoting Gray v. Spillman 925 F. 2d 90 @ 94 (4th Cir. 1991).

> "even in the absence of physical injury," plaintiff may prove actual damages under §1983 "based on injuries such as 'personal humiliation' and 'mental anguish and suffering'"

In closing, I request the inmate handbook not provided to me at the time of entry into the Jail. I am quite certain that is a violation of Alabama law. However, that is not why we are here. We are here to foreclose any

---5---

possible defense, under the PLRA, whereby dismissal, with or without prejudice might occur. For that I need the handbook, and of course the method of advancing, to a Tier 2, 3, and if required a Tier 4 filing.

If the Jail, were to be forward thinking enough, they could consider waiving this requirement.[2] When the time arrives for the damages portion of my expected judgement, the Court and the jury might look very favorably upon two things;

1. That the facility waived administrative remedies, and would not move to dismiss for failure to exercise such remedies, and

2. Immediately cease and desist the barbaric practice of ostracizing inmates with HIV/AIDS. That the facility immediately stop violating the Health Information Patient Portability Act ("H.I.P.P.A.") regulations and medical privacy laws and the Americans with Disabilities Act ("A.D.A."). That the facility cease and desist violating the Civil Rights of inmates infected with HIV/AIDS, under the Federal statute 42 USC §1983.

Quoting Daskalea v. District of Columbia 227 F. 3d @ 450;

> ... forced naked dancing, and other indignities borne by Sunday Daskalea at the District of Columbia Jail are "simply not part of the penalty that criminal offenders pay for their offenses against society." Farmer v. Brennan 511 U.S. 825, 834, 114 S. Ct. 1970, 128 L.Ed.2d 811 (1994).

Govern yourselves accordingly.

Jeremiah W. Green

---

[2] Note in Elwood v. Jeter 386 F. 3d. 847 and Woodall v. Federal Bureau of Prisons 432 F. 3d. 235, the government was intelligent enough to realize that as a result of illegally and unlawfully enforcing a statute, the Defendant's waived exhaustion of remedies as a defense. I ask that Elmore County Jail, as first step, follow the direction of the BOP, and voluntarily waive this defense. Showing such good faith as in Nolley v. County of Erie 802 F. Supp. 898 (W.D.N.Y. 1992), resulted in vacating the Punitive Damages award by Senior Judge Curtin. Your immediate concurrence will alleviate this pointless exercise.

UNITED STATES POSTAL SERVICE
MONTGOMERY AL 361

11 MAY 2006 PM 3 L

First-Class Mail
Postage & Fees Paid
USPS
Permit No. G-10

• Sender: Please print your name, address, and ZIP+4 in this box •

JEREMIAH W. GREEN
REG # 11165-171
FEDERAL PRISON CAMP ATLANTA
POST OFFICE BOX 150160
ATLANTA, GEORGIA 30315-0160

S8-182

0160    B080    lobludmudhdhlhlhulhludhduudludhudhd

---

| SENDER: *COMPLETE THIS SECTION* | *COMPLETE THIS SECTION ON DELIVERY* |
|---|---|
| ■ Complete items 1, 2, and 3. Also complete item 4 if Restricted Delivery is desired. <br> ■ Print your name and address on the reverse so that we can return the card to you. <br> ■ Attach this card to the back of the mailpiece, or on the front if space permits. | A. Signature <br> X *Michael* ☐ Agent  ☐ Addressee <br> B. Received by ( *Printed Name*) _Michael Fenson_  C. Date of Delivery _5-11-06_ |
| 1. Article Addressed to: <br><br> **THE ELMORE COUNTY JAIL** <br> **ATTN: AJA ROBERTS, WARDEN** <br> **8955 US HIGHWAY 231** <br> **WETUMPKA, ALABAMA 36092** | D. Is delivery address different from item 1? ☐ Yes <br> If YES, enter delivery address below: ☐ No |
| | 3. Service Type <br> ☒ Certified Mail  ☐ Express Mail <br> ☐ Registered  ☐ Return Receipt for Merchandise <br> ☐ Insured Mail  ☐ C.O.D. <br> 4. Restricted Delivery? (*Extra Fee*)  ☐ Yes |
| 2. Article Number <br> (*Transfer from service label*) | 7003 1680 0005 1212 3061 |

PS Form 3811, August 2001          Domestic Return Receipt          102595-01-M-0381

Jeremiah W. Green, Reg. No. 111 171
Federal Prison Camp Atlanta
Post Office Box 150160
Atlanta, Georgia 30315-0160

May 23, 2006

Elmore County Jail
Attn: Aja Roberts, Warden
8955 US Highway 231
Wetumpka, Alabama 36092

RE:   Jeremiah W. Green
      USMS Reg. No. 11165-171

Dear Warden Aja Roberts,

This letter will serve as my final contact to you, the County of Elmore, and the Corrections Officers employed by your institution. In my last letter, dated, May 08, 2006, you were advised of my intent to file suit against you, the County of Elmore and four of the Corrections Officers employed by your institution. Said letter and the enclosed copy of proposed Statement of Claim were delivered via Certified US Mail on May 11, 2006 and signed for by an agent of the Elmore County Jail. A copy of US Postal Form 3811, Domestic Return Receipt, has been enclosed.

There is no doubt that my intentions were made clear during my last contact. However, your lack of response to my letter, which was clearly intended as my "First Tier" of the grievance process, only further solidifies my decision to seek preliminary and permanent injunctive relief, as well as, compensatory and punitive damages for the positively unlawful custom, practice and policy of the Elmore County Jail. As outlined in said letter, this suit will be directed at all parties in both their personal and official capacities.

Your failure to provide an immediate response and settlement will cause filing this suit which includes violations of my Civil Rights, the Americans with Disabilities Act ("A.D.A."), and the Health Information Patient Portability Act ("H.I.P.P.A."). Failure to respond with a proposed settlement, postmarked, on or before, Thursday, June 08, 2006, will waive your opportunity to resolve this matter amicably. I expect your response promptly.

Regards,

Jeremiah W. Green

Attachments: 7

Jeremiah W. Green *  11165-171
Atlanta Federal Prison Camp
P.O. Box 150160* Atlanta, Ga.
30315-0160

RECEIVED

June 14, 2006

2006 JUL 26  A 9 38

United States District Court
Middle District of Alabama
Office of the Clerk
P.O. Box 711
Montgomery, Alabama 36101-0711
Attention: Debra P. Hackett

<u>Green v. Elmore County Jail</u>

Dear Ms. Hackett:

Thank you very much for your response dated June 8, 2006. To clarify, the purpose in my contacting the Chief Judge was to advise him and the U.S. Attorney of what I believe to be a grievous violation of the Code of Federal Regulations. If you will consult the Code on line at 28 CFR Part 40 - Standards for Inmate Grievance Procedures you will see the discussion of this issue, and the relief offered to those who have been damaged by a violation of the Code.

Specifically, at 28 CFR §40.2 discusses a written grievance procedure must be installed at any institution. Such written procedure is to be exhaustively discussed orally at time of admission by an inmate. None of this was done in my situation, and when enquiring as to the method of exhaustion necessary in my certified letter to the institution, which I copied you on in the submission, the institution ignored my request. As an inmate in the Eleventh Circuit I am expected to exhaust my remedies, administratively prior to moving forward in District Court. If the institution refuses to honor the law, then what recourse does an inmate have?

Apparently the Code addresses the recourse for an inmate. And that recourse is to advise the Chief Judge and the U.S. Attorney that the institution is not in compliance with the Code, and rely on the integrity of the Court and the local U.S. Attorney to investigate, follow through and ensure the institution is in compliance. That is discussed thoroughly in 28 CFR §40.18 Suspension of Certification, and 28 CFR §40.19 Withdrawal of certification, and 28 CFR §40.21 Notification of the court. Quoting freely from §40.21

"The Attorney General **shall notify** in writing the Chief Judges of the U.S. Court of Appeals and of the U.S. District Court(s) within whose jurisdiction the applicant is located of the certification, suspension of certification, withdrawal of certification and recertification of the applicant's grievance procedure. The Attorney General **shall notify** the court of the certification status of any grievance procedure at the request of the court or any party in an action by an adult inmate pursuant to 42 U.S.C. §1983."

---1---

"EXHIBIT C" - Four Pages

The purpose in enclosing all the documents as I did in the last submission was to advise the Middle District of Alabama that I was an adult inmate who was a party to a §1983 action. That I believe the Elmore County Jail has no grievance procedure in place, that such violation is a contravention of the Code of Federal Regulations, that such contravention is to be investigated by the Chief Judge and the U.S. Attorney's office, and that such investigation is to be initiated by an adult inmate in a §1983 action.

Having now clarified my submission, please forward it to the Chief Judge in the Middle District of Alabama, in compliance with the Code of Federal Regulations. The A/G **shall notify** the Chief Judges as to their findings, and as an adult inmate having filed a §1983 action I would ask to be copied on such findings and decisions.

Thank you for advising me that the court does not offer legal advice through the Clerk's Office. I suspect concerning the depth of the Code, and the plethora of Federal Laws, that we could all help one another, but on this particular subject, I believe my research is thorough and accurate, and that I am fine in terms of my knowledge of the code and the follow through.

Remaining,

Sincerely Yours,

Jeremiah W. Green

Please find enclosed the return of my submissions, which you were kind enough to return to me on June 8th. Please forward to the Chief Judge.

---2---

# UNITED STATES DISTRICT COURT

## MIDDLE DISTRICT OF ALABAMA

### OFFICE OF THE CLERK

POST OFFICE BOX 711

MONTGOMERY, ALABAMA 36101-0711

DEBRA P. HACKETT, CLERK

TELEPHONE (334)954-3600

June 8, 2006

Jeremiah W. Green Reg # 11165-171
Federal Prison Camp Atlanta
P.O. Box 150160
Atlanta, GA 30315-0160

Dear Mr. Green:

This is in response to your letter of June 8, 2006. The court does not give legal advice nor does the court understand the nature of this filing. If you are wanting to file a new case within this district, the filing fee is $350.00 and you must prepare the proper forms.

If we can be of further assistance, please feel free to contact our office.

Sincerely yours,

DEBRA P. HACKETT, CLERK

By:

Deputy Clerk

DPH/cs

Jeremiah W. Green, Reg. No. 11165-71
Federal Prison Camp Atlanta
Post Office Box 150160
Atlanta, Georgia 30315-0160

June 05, 2006

United States District Court
Middle District of Alabama
Attn:  Chief Judge
15 Lee Street
Montgomery, Alabama 36101-0197

Dear Chief Judge:

I contact you to enter a formal complaint to the Court, regarding what I assert are retroactive and continuing violations of the Code of Federal Regulations ("CFR") Part 40 §40.18(a) regarding the Elmore County Jail in Wetumpka, Alabama.

I attach a copy of a pending claim, with this correspondence, of a United States Code ("U.S.C.") Title 42 §1983 action.  Such action is for violations of the Americans with Disabilities Act ("A.D.A."), the Health Information Patient Portability Act ("H.I.P.P.A.") and other Federal Statutes.

I have attempted to trigger any administrative remedies as discussed clearly in CFR Part 40.  The ignorance exhibited by the Elmore County Jail in their treatment of the handicapped continues in this lack of response to my initial "Tier 1" filing.  Considering I was never advised orally of the grievance process and further provided no written advice, is a contravention under §40.3.

Your confirmation of my advice to the Court would be appreciated.  My request for relief submitted is that the grievance procedure certification be suspended until the facility is compliant.  Such suspension, I must presume will deny any Federal inmates from being remanded to this facility by the U.S. Marshal's or the Federal Bureau of Prisons.

Your courtesy to the requests noted herein is greatly appreciated, I remain,

Sincerely,

Jeremiah W. Green

CC:  U.S. Attorney for the Middle District of Alabama
Attachments Enclosed