IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA

Jeremiah W. Green

    Plaintiff

v.

The Elmore County Jail, et al;

Case No: 2:06cv667·WKW

Magistrate:

District Judge:

## MEMORANDUM OF LAW

### WAS THE ELMORE COUNTY JAIL JUSTIFIED IN DISCRIMINATING AGAINST THE PLAINTIFF FOR LEGITIMATE PENOLOGICAL PURPOSES?

    Plaintiff suspects Defendant shall answer this claim, as do many penological institutions, masking prejudice and parochial attitudes, by suggesting that the behavior of the staff, and the facilities practices, customs and policies, were for "penological purposes". Unfortunately, as Discovery will prove, blatant discrimination occurred.

    Did the blatant discrimination of Plaintiff have any penological purpose? The answer is in clearly established law, dating back nearly two decades. The United States Code, Section 42, does not allow for the transmission of sensitive medical information. It has been determined that such a violation is a civil rights transgression, answerable by litigation under §1983. Additionally, the Americans with Disabilities Act ("A.D.A."), United States Code, Section 42, 12100, et. seq., also does not allow for such discrimination.

    We first cite, <u>Doe v. Borough of Barrington, (D.N.J. 1990), 729 F. Supp 376</u>, a case where privacy, and the right to be secure in certain sensitive medical information was found to be the right of the Plaintiff's family to sue for damages.

    At <u>id, 382</u>, "This court finds that the Constitution protects Plaintiff's from governmental disclosure of their [husband's and father's] infection with the AIDS virus". The Doe case, we would note, was decided on Jan. 29, 1990.

Some 16 years, prior to the incarceration of Plaintiff at the Elmore County Jail, two important ideas of law, were established. The first was that the information of an AIDS patient, is absolutely confidential. The second point is that an AIDS patient cannot transmit AIDS virus by "breathing" on a person who is not infected. We note <u>id at 385</u> "The state of medical knowledge <u>**at the time of this incident**</u> established that AIDS is <u>**not transmitted by casual contact.**</u>

The Doe case, settled (16) years prior, established a bright line that

1. The transmission of AIDS is not transmitted by casual contact, and
2. That the patients information is confidential.

We cite secondly, the prevailing organization, and largest "jailer", the Federal Bureau of Prisons. With over 200,000 inmates, the AIDS virus is an enormously important issue. Does the Bureau of Prisons ("BOP") segregate inmates with AIDS, dressing them out in so many Hawthorne-like "Scarlet Letter" inscribed outfits? Or does the BOP have a "pink triangle" imprinted on Federal BOP inmate, jumpsuits? Hardly. The BOP is believed to be among the most progressive, as well as the largest organization whose sole purpose is to incarcerate, and rehabilitate offenders. We refer to the <u>Federal Bureau of Prisons, Policy/Program Statement BP 6190.03 at page 13</u>.

"Inmates with infectious diseases that are not foodborne or transmitted by casual contact; i.e. HBV, HCV, HIV, are not prohibited from assignment to Food Service based solely upon the diagnosis of the infectious disease. The primary care provider will determine the inmates suitability for Food Service." Further in the document, continuing on page 13, Bold was not added for effect Bold was used in the Policy/Program Statement. [**Except as provided in our disciplinary policy, no special or separate housing units may be established for HIV-positive inmates.**]

Clearly the BOP, who was the actual entity responsible for the transfer of Plaintiff to the Atlanta FPC, has a policy diametrically opposed to that of the Elmore County Jail.

-----2---

Continuing support for the "unsubstantiated fears and ignorance", citing Johnson v. U.S. 816 F. Supp @ 1524 (N.D. Ala. 1993) we direct the reader to Deustsch v. Federal Bureau of Prisons, 737 F. Supp. 261 (S.D.N.Y. 1990), quoting, (Plaintiff has not presented ... any facts or allegations from which it might be inferred that the decision to house the cellmate with [Plaintiff] without informing him of the HIV test results evidenced a deliberate indifference to his medical needs").

Cited in Johnson, id, @ 1523, is the United States government report emphasized:

> [The]AIDS virus is hard to get and easily avoided. You won't just "catch" AIDS like a cold or flu because the virus is a different type. The AIDS virus is transmitted through sexual intercourse, the sharing of drug needles, or to babies of infected mothers before and during birth. You won't get the AIDS virus through everyday contact with the people around you in school, in the workplace, at parties, child care centers, or stores. You won't get it by swimming in a pool, even if someone in the pool is infected with the AIDS virus ...You won't get AIDS from a mosquito bite. The AIDS virus is not transmitted through the mosquito's salivary glands like other disease[s] such as malaria or yellow fever. You won't get AIDS from bed bugs, lice, flies or other insects either. You won't get AIDS from saliva, sweat, tears, urine or a bowel movement. You won't get AIDS from a kiss. You won't get AIDS from clothes, a telephone or a toilet seat. It can't be passed by using a glass or eating utensils that someone else has used. You won't get the virus by being on a bus, train or crowded elevator with a person who is infected with the virus, or who has AIDS.

The interesting note regarding the report noted heretofore, the date of this Publication, The United States Department of Health and Human Services, Pub. No. (CDC) HHS-088-8404, "Understanding AIDS." p. 2 (1988). This publication nearly 18 years old when Plaintiff arrived at the Elmore County Jail, completely undermines the acts, policies, customs and practices. That the undermining of such custom, practices, and polices, is that the Elmore County Jail, is absolutely, and uncontrovertedly in violation of the Civil Rights law, that protect the Plaintiff from damage.

Further to support of the anachronistic and unlawful custom, practice and policy of the Elmore County Jail, is the 1992 lawsuit in the Western District of New York, citing <u>Nolley v. County of Erie 802 F. Supp. 898 (W.D.N.Y. (1992)</u>. Annotations of the Nolley case, suggest that punitive damages were awarded for "unwarranted disclosure of HIV-positive status" in violation of privacy rights, segregation based upon her HIV status. In Nolley, the "red sticker" policies violated plaintiff's Constitutional Right to privacy under 42 USC §1983, <u>Nolley 776 F. Supp. @ 743</u>. I would remind the Defendant's that the Elmore County Jail did not have a "red sticker" policy on medical records, the Elmore County Jail, dressed, and dresses and will continue to dress out inmates in "red medical scrub outfits", without the intervention by a Court, unless the Defendant's are amenable to an immediate policy change. Defendant's may raise a defense, that "red medical scrub outfits" are used for any communicable disease. This defense was raised in the Nolley case, and as such being decided by Judge Curtin, we quote the New York law, regarding this issue;

> "Confidential HIV-related information" means any information, in the possession of a person who provides health or social services or who obtains the information pursuant to a release of confidential HIV-related information concerning whether an individual has been the subject of an HIV-related test, or has HIV infection, HIV-related illness or AIDS, **or information which identifies or reasonably could identify an individual as having one or more conditions, including information pertaining to such conditions,** including information pertaining to such individuals contact. (N.Y.C.R.R. §7064.2(g))

Thus, pursuant to the COC regulations, if the placement of a red sticker on an inmate's documents and other items identified of "reasonably could [have] identif[ied] an individual" as being HIV-positive, their HIV confidentiality would have been breached.

This is exactly what occurred at the Elmore County Jail. Plaintiff was placed in a "red medical scrub outfit". Plaintiff was ostracized from the group, yet still accessible for potential violent offenders who might choose to "beat the queer out of him". Whether Plaintiff was required to wear a rainbow colored placard around his neck saying "I am a FAG with AIDS", or wear a scarlet outfit,

---4---

Plaintiff was made to be clearly known to the group as a "FAG with AIDS".

Clearly established law tells the State of Alabama, and the County of Elmore that this behavior by the customs, practices and policies is unlawful. That the County Attorney, who is responsible for promulgation of such regulations, is personally responsible for such customs, practices and policies. That Warden Aja Roberts is personally responsible for the enforcement of such municipal customs, practices and policies. That the Corrections Officers being untrained in communicable diseases, by the community, were personally responsible for the enforcement of such anachronistic customs, practices and policies, knowing fully well that such treatment of an inmate, in the 21st Century, in the United States of America must be unlawful.

**Is an award appropriate even in the absence of physical injury?** Plaintiff cites <u>Daskalea v. District of Columbia 227 F. 3d 433 @ 444 (D.C. Cir. 2000)</u>, quoting <u>Gray v. Spillman 925 F. 2d 90 @94 (4th Cir. 1991)</u>;

> "even in the absence of physical injury", plaintiff may prove actual damages under §1983 "based on injuries such as 'personal humiliation' and 'mental anguish and suffering'"

Plaintiff is an American Citizen. Plaintiff faces metaphorically a sentence of death. The "stigma" of being thought of by some of "mainstream" America as a "Fag" who "deserves what he gets" is enough hatred for any human being to live with in freedom. In freedom Plaintiff has choice, when incarcerated Plaintiff must rely on the integrity of the law to protect him from incredible, truly unbelievable violations of his rights. From the dissenting opinion of Justice Brennan in <u>O'lone v. Estate Shabazz 482 US 342</u>,

> "It is thus easy to think of prisoners as members of a separate netherworld, driven by its own demands, ordered by its own customs, ruled by those whose claim to power rests on raw necessity. When prisoners emerge from the shadows to press constitutional claim, they invoke no alien set of principles drawn from a distant culture. Rather, they speak the language of the charter when all of us rely to hold official power accountable. They ask us to acknowledge that power exercised in the shadows must be restrained at least as diligently as power that acts in the sunlight."

The Plaintiff asks this Honorable Court to assist him in his efforts to

"shine the sun", a glowing, intense light of integrity and honesty on the Elmore County Jail. For all the "FAGS with AIDS" and other unfortunate handicapped Americans, he prays for the "sunshine of integrity and justice" found in a U.S. District Court for assistance.

                                              Respectfully Submitted,

                                              *[signature]*

                                              Jeremiah W. Green, Plaintiff, **PRO SE**

Signed this <u>24th</u> day of July, 2006.