UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

JEREMIAH W. GREEN,                    :

     Plaintiff,                    :

                             :

v.                                   :    CIVIL ACTION NO.
                             :    2:06-CV-667-WKW-VPM

ELMORE COUNTY JAIL, et al.,          :

     Defendants.                   :

### PLAINTIFF'S PRELIMINARY RESPONSE
### TO DEFENDANT ROBERTS' SPECIAL REPORT

    COMES NOW, Jeremiah W. Green, Plaintiff in the above-styled cause, and submits his Preliminary Response to Defendant Roberts' Special Report to the Court.

### INTRODUCTION

    The Plaintiff begins this Preliminary Response by apologizing to the Court for such brevity. Work on this response commenced on Wednesday, November 01, 2006, and is limited to very few hours to meet the deadline of November 08, 2006. Plaintiff having respectfully requested the opportunity to amend his filings with a reasonable extension of time, Plaintiff asserts that further research and support will be forthcoming to the following preliminary representations.

### PLAINTIFF'S RESPONSE CONTRADICTING ASSERTED "FACTS"

    Defendant's counsel has referred to Wright & A. Miller, Federal Practice and Procedure, Defendant Roberts' Special Report (hereinafter "Roberts Report"), p. 39 at ¶1, "A reviewing court need not 'swallow [Defendant's] invective hook, line and sinker...'"

Further, the standard for Summary Judgment requires the Court
to view the evidence in the light most favorable to the Plaintiff.
Greason v. Kemp, 891 F.2d 829, 831. Further, Defendant's counsel
refers to "favoring... 'evidence supporting the moving party that
is uncontradicted or unimpeached, at least to the extent that that
evidence comes from disinterested witnesses.'"

Plaintiff is incarcerated on a compound with approximately
500 other Federal inmates. Within a short period of time after
receiving Roberts Report, id., Plaintiff secured a disinterested
witness, who was incarcerated at the Elmore County Jail as a
Federal inmate in transit, like Plaintiff, two months after the
Plaintiff was in custody of the Elmore County Jail. Such witness,
a 27-year veteran attorney and former Dade County Judge, has
provided a Declaration under 28 U.S.C. §1746, contradicting Warden
Sue/Aja Roberts. Incontrovertibly inmate Shenberg, a Federal
inmate, was dressed in orange, as were all other Federal inmates
he knew or came into contact with while at the Elmore County Jail.

In all respect to the Court, if Plaintiff was entitled to
the discovery that might have developed sworn statements, or
declarations from the officers who dressed Plaintiff in the red
medical scrubs, or from the Federal inmates incarcerated the
evening of February 21, 2006, then the Court would have a deep
enough pool of disinterested witnesses to determine what the
reality was regarding dressing the Plaintiff in red medical scrubs.

The second major contradiction Plaintiff of Defendant Roberts
"FACTS" is the representation by Defendant Roberts as to inmates

being provided with jail handbooks.  Whether Plaintiff received
a handbook or not, which he did not, 28 CFR §40.3 requires there
to be a verbal/oral explanation of the inmate grievance procedure.
This issue is only somewhat germane.  The indisputable fact remains,
attached and annexed as Plaintiff's Exhibit's C and D, are the
first and second letters addressed to Defendant Sue/Aja Roberts,
Warden of Elmore County Jail; the first letter, Certified United
States Mail Article No. 7003 1680 0005 1212 3061, was signed for
by one Michael Tempton/Templon (illegible) on May 11, 2006, and
the second letter, delivered by United States Mail following its
mailing on May 23, 2006.  Plaintiff attempted to exhaust his
administrative remedies.  Defendant Roberts denied Plaintiff all
access to the Administrative Remedy Program, thus precluding the
Elmore County Jail and Defendant Roberts from using "failure to
exhaust" as an affirmative defense.

    The third major contradiction by Plaintiff of Defendant
Roberts "FACTS" is the representation by Defendant Roberts in the
Affidavit of Sue Roberts (hereinafter "Roberts Affidavit"), p. 1
at ¶4, "I did not become aware of the allegations made the basis
of Mr. Green's Complaint until I was served with the Complaint
in this action."  Plaintiff notified Defendant Roberts on two
separate occasions, and on both occasions made his complaint very
clear.  See Plaintiff's Exhibit's C and D.

    Among the most critical issues to adjudicate,is the difference
in perception between Plaintiff and Defendant Roberts as to the
"subtlety" of the lettering on the food tray and water cooler

---3---

the Plaintiff was required to use and possess.  Please note
Plaintiff's Exhibit E, attached and annexed herein, as a drawing,
to scale, of the food tray and water cooler with the "subtle"
lettering as represented by Defendant Roberts.  This is an issue
that in a rush to judgment could not be resolved by summary judgment.

Summarizing the above contradictions the Plaintiff asks, how
is it possible that every inmate in the "pod" knew Plantiff was
HIV-positive, if the red clothing went to all Federal inmates?
Are all Federal inmates, then, "Fags with AIDS?"  How is it possible
if the red clothing were not a "flag" that all Federal inmates wore
red, then was it the "subtle" lettering on the food tray, which
the Plaintiff was forced to place into a plastic garbage bag in
front of the "pod", or was it the unique water cooler that made
Plaintiff so obviously a "Fag with AIDS?"  How is it that the
Plaintiff can exhaust administrative remedies when he was not
provided with a jail handbook, nor a verbal briefing on the Admin-
istrative Remedy Program, and the Plaintiff's requests to the
Warden are ignored?  Finally, how is it that Warden Sue/Aja Roberts
had no knowledge of the Plaintiff's complaints when she received
two very detailed letters via the United States Postal Service?
It is Plaintiff's assertion that Defendant Sue Roberts and the
customs, practices, and policies of the Elmore County Jail are
dangerously discriminatory to those inmates with HIV/AIDS.

<u>DISCUSSION OF LAW</u>

1.  Defendant Sue Roberts is <u>not</u> immune under Alabama law
    due to the exceptions of the 14th amendment, the ADA,
    and Interstate Commerce Clause.

---4---

Defendant's counsel has cited Carr v. City of Florence, Ala.,
916 F.2d 1521 (11th CA 1990), rehearing denied, 925 F.2d 1477
(11th CA 1991).  The Carr court outlined two major exceptions to
a State's Eleventh Amendment immunity.

First, Congress can abrogate Eleventh Amendment immunity
without the States consent when it acts pursuant to the enforce-
ment provision of Section 5 of the 14th Amendment.  Atascadero
State Hospital v. Scanlon, 473 US 234, 87 LEd.2d 171 (1985).

In PA Department of Corrections v. Yeskey, 141 LEd.2d 215
(1998), the court established that an inmate with a disability
is required to participate in all benefits or programs in a state
prison.  Defendant Roberts has established that the Elmore County
Jail is an instrumentality of the State of Alabama.  The discrim-
ination shown to Plaintiff with his scarlet colored "garb" and
his vividly marked food tray and his exclusive water cooler is
an ADA violation, if Plaintiff is a qualified handicapped person.

Is Plaintiff a qualified handicapped person?  The answer is
before this Court, answered by the Supreme Court in Bragdon v.
Abbott, 141 LEd.2d 540 (1998)

> Decision:  Dental patients asymptomatic HIV infection
> held to be a disability under ADA, 43 U.S.C. §12102(2)(A)

Plaintiff is not asymptomatic, as in the initial stages of
HIV infection, Plaintiff is symptomatic, as in the end stages of
HIV infection - better known as full blown AIDS.

The Federal Bureau of Prisons and the United States Marshal
Service, agencies of the United States Department of Justice,
contract, without question for the housing of prisoners, across
state lines.  The movement of prisoners as serfs of the Department

8

of Justice affects interstate commerce.  Although this issue was
not decided in Yeskey, id., Plaintiff believes that the Eleventh
Amdendment sovereign immunity of Alabama has been abrogated by
the contract between the Department of Justice and the Elmore
County Jail.  As such, the continuing discovery by Plaintiff into
the contracts between the Department of Justice and the Elmore
County Jail is critically necessary.

Plaintiff points to the Code of Federal Regulations ("CFR")
Chapter 28 sections 35, 36, 37, 39 and 40.  28 CFR §35.130;

> (a) No qualified individual with a disability shall on the
> basis of disability, be excluded from participation in or
> be denied the benefits of the services, programs or activ-
> ities of a public entity, or be subjected to discrimination
> by any public entity.
>
> (b)(1) A public entity, in providing any aid, benefit, or
> service, may not, directly or through contractual, licensing
> or other arrangements, on the basis of disability...

In 28 CFR §35.104;

> (4)  Disability means, with respect to an individual, a
> physical or mental impairment that substantially limits
> one or more of the major life activities of such individual;
> a record of such impairment; or being regarded as having
> such impairment.
>
> (1)(ii)  The phrase physical or mental impairment includes,
> but is not limited to... HIV disease (whether symptomatic
> or asymptomatic)

Further at 28 CFR §40.1 et. seq., Minimum Standards for
Inmate Grievance Procedures; 28 CFR §40.3;

> The written grievance procedure shall be readily available
> to all employees and inmates of the institution.  Additionally,
> each inmate and employee shall, upon arrival at the institution,
> receive written notification and an oral explanation of the
> procedure...

At 28 CFR §40.11;

> An application for certification of a grievance procedure
> under the Act shall be submitted to the Office of the Attorney
> General, U.S. Department of Justice, Main Justice Building,

Washington, DC 20530, and shall include a written statement
describing the grievance procedure, a brief description of
the institution or institutions covered by the grievance
procedure...

The placement of this application in the U.S. Mail invokes
the Interstate Commerce Clause.  The benefit of the contract with
the United States Marshal Service and the Federal Bureau of Prisons
inures to the County of Elmore.  As a result the implicit abrogation
of the sovereign immunity of the State of Alabama occurs when the
first Federal inmate arrives at the Elmore County Jail.  This
issue is discussed in length in Poarch Band of Creek Indians v.
State of Alabama, 776 F.Supp. 550 (S.D. AL 1991) at 556 referring
to the Parden v. Terminal Railway, 377 U.S. 184, 84 S.Ct. 1207,
12 LEd.2d 233 (1964) The Court held that "Alabama, when it began
operation if an interstate railroad approximately 20 years after
enactment of the FELA (ADA), necessarily consented to such suit
as was authorized by that Act."  Id. at 192, 84 U.S. at 1213.
Thus, under Parden, when a state chooses to engage in a business
that is regulated by the Federal Government pursuant to the
Commerce Clause of the Federal Constitution, that state is deemed
to have consented to the federal regulation that comes with the
territory - including lawsuits by private parties.

### 2. Plaintiff has exhausted all "available" administrative remedies in compliance with 42 U.S.C. §1997e(a).

The Prison Litigation Reform Act, 42 U.S.C. §1997e(a)
specifically advises inmates that with failure to exhaust admin-
istrative remedies inmates are precluded jurisdictionally from
accessing the United States District Courts.  Plaintiff is

---7---

absolutely clear on the intent, meaning and purpose of exhaustion. All seven points; a litigable record, the ability to secure redress without wasting limited and precious judicial resouces, are among some points. Plaintiff attempted to exhaust all "available" remedies. First, he was not provided a handbook to be reviewed, which in the following case has been deemed as failure of the facility to honor the administrative remedy process. In Griffith v. Selsky, 325 F.Supp.2d 247 (W.D.N.Y. 2004), the inmate made a "reasonable attempt" to exhaust administrative remedies and such attempts satisfied the requirements due to officers impeding or preventing his efforts. However, Plaintiff asserts a case, most on point is that of Dale v. Lappin, 376 F.3d 652 (7th Cir. 2004). In Dale, id., at 654, Dale "requested grievance forms." He was told that the time limit had passed, and his only recourse was a TORT action under FTCA. At Dale, id., at 655, the Dale court discusses the "rules" for the affirmative defenses of failing to exhaust. That is the defendant has the burden of proving and pleading that such exhaustion did not occur. Plaintiff has made as part of the record, a certified letter sent to Warden Sue/Aja Roberts, signed for on May 11, 2006, by an agent for the Elmore County Jail. Attached as Plaintiff's Exhibit C. It is beyond dispute that Plaintiff requested the available remedies, and was ignored. It is beyond dispute that such preclusion from accessing available remedies is a non-affirmation of the defense. It is therefore Plaintiff's assertion that Plaintiff attempted to exhaust all available remedies under the PLRA.

---8---

Plaintiff asserts that the "perfect" case to be cited is
Miller v. Norris, 247 F.3d 736 (8th Cir. 2001). In Miller, the
inmate left State custody, as did Plaintiff, and headed to Federal
custody, as did Plaintiff. Miller had written to the Arkansas
Department of Corrections for grievance forms, as did Plaintiff.
The Arkansas Department of Corrections, nor the Elmore County Jail
responded. Miller sent his letter via Certified U.S. Mail, as
did Plaintiff Green. The 8th Circuit, id., at 740, noted;

> [8] We also conclude, however, that Mr. Miller alleged
> facts in his motion that may estabilish compliance with
> the statutory exhaustion requirement...

> [9] We believe that a remedy that prison officals prevent
> a prisoner from "utiliz[ing]" is not an "available" remedy
> under §1997e(a), and that Mr. Miller's allegations raise
> inference that he was prevented from utilizing the prisons
> administrative remedies.

Plaintiff Green has exhausted all "available" administrative
remedies, just like Booth v. Churner, Woodford v. Ngo, and Miller
v. Norris, discussed.

### CONCLUSION

Defendant's counsel says everything with his Storck v. City
of Coral Springs, 354 F.3d 1307, reference at 1318; "Unless a
government agent's act is so obviously wrong, in the light of pre-
existing law, that only a plainly incompetent officer or one who
was knowingly violating the law would have done such a thing, a
government actor has immunity from suit."

It is Plaintiff's assertion that Defendant Roberts, the
Sheriff Bill Franklin, and the jailers knew that which they did
was a violation of law, or that they are so incompetent that the
results are plain.

**WHEREFORE**, the Plaintiff respectfully requests that this Honorable Court deny Defendant Roberts Motion for Summary Judgment, and requests affirmation of the previously filed Motions for Extension of Time, Compelling the complete Special Report of Defendant Sue Roberts and Discovery requests.  Plaintiff also requests this Honorable Court to permit the Plaintiff to amend this Preliminary Response to the Defendant's incomplete Special Report.

Respectfully Submitted this 7th day of November, 2006.

Jeremiah W. Green, Plaintiff
Federal Reg. No. 11165-171
Federal Prison Camp Atlanta
Post Office Box 150160
Atlanta, Georgia 30315-0160

## CERTIFICATE OF SERVICE

I, Jeremiah W. Green, hereby certify that on this 7th day of November, 2006, I have served the foregoing document on the following person(s):

Mr. C. Richard Hill, Jr.
Attorney for Defendant Sue Roberts
WEBB & ELEY, P.C.
Post Office Box 240909
Montgomery, Alabama 36124-0909

by placing a true and correct copy of the foregoing in the prison mailing system mailbox located at the Federal Prison Camp Atlanta, postage prepaid, on this 7th day of November, 2006.

Jeremiah W. Green, Plaintiff
Federal Reg. No. 11165-171
Federal Prison Camp Atlanta
Post Office Box 150160
Atlanta, Georgia 30315-0160

UNITED STATES POSTAL SERVICE
MONTGOMERY AL 361

First-Class Mail
Postage & Fees Paid
USPS
Permit No. G-10

11 MAY 2006 PM 3 L

• Sender: Please print your name, address, and ZIP+4 in this box

JEREMIAH W. GREEN

REG # 11165-171

FEDERAL PRISON CAMP ATLANTA

POST OFFICE BOX 150160

ATLANTA, GEORGIA 30315-0100

S8-182

)160   8050

---

| SENDER: *COMPLETE THIS SECTION* | COMPLETE THIS SECTION ON DELIVERY |
|---|---|
| ■ Complete items 1, 2, and 3. Also complete item 4 if Restricted Delivery is desired. <br> ■ Print your name and address on the reverse so that we can return the card to you. <br> ■ Attach this card to the back of the mailpiece, or on the front if space permits. | A. Signature <br> X _Michael_____ ☐ Agent ☐ Addressee <br> B. Received by ( *Printed Name*) _Michael Ferguson_ C. Date of Delivery _5-11-06_ |
| 1. Article Addressed to: <br><br> THE ELMORE COUNTY JAIL <br> ATTN: AJA ROBERTS, WARDEN <br> 8955 US HIGHWAY 231 <br> WETUMPKA, ALABAMA 36092 | D. Is delivery address different from item 1? ☐ Yes <br> If YES, enter delivery address below: ☐ No |
| | 3. Service Type <br> XX Certified Mail ☐ Express Mail <br> ☐ Registered ☐ Return Receipt for Merchandise <br> ☐ Insured Mail ☐ C.O.D. |
| | 4. Restricted Delivery? (*Extra Fee*) ☐ Yes |
| 2. Article Number <br> (*Transfer from service label*) | 7003 1680 0005 1212 3061 |
| PS Form 3811, August 2001 | Domestic Return Receipt | 102595-01-M-0381 |

EXHIBIT C

Jeremiah W. Green, Reg. No. 11165-171
Federal Prison Camp Atlanta
Post Office Box 150160
Atlanta, Georgia 30315-0160

May 08, 2006

Elmore County Jail
Attn: Aja Roberts, Warden
8955 US Highway 231
Wetumpka, Alabama 36092

RE:  Jeremiah W. Green
     USMS Reg. No. 11165-171

Certified US Mail, R.R.R., No. 7003 1680 0005 1212 3061

Dear Warden Aja Roberts,

I contact you for the express purpose of providing to you, the County of Elmore, and the Corrections Officers, an opportunity to modify the custom, practice and policy of the Elmore County Jail.  In complying with the Prisoner Litigation Reform Act, ("PLRA"), I am of the opinion that due to the single night stay I had as a BOP remand, inmate, that such administrative remedy exhaustion as required is irrelevant.  I make that claim for several reasons, none of which are germane for purposes of this letter.  What is important is that you are made very clear, that;

1.  I require for my records an inmate handbook from the Elmore County Jail, for a record of the administrative remedy exhaustion process under Alabama State law.

2.  That failure to settle the damages incurred by me on February 21, 2006 and February 22, 2006, I will be suing for, preliminary and permanent injunctive relief for all inmates situated such as me, now and in the future, to avoid the barbaric, puritanical, and parochial treatment of all HIV/AIDS infected inmates,

3.  Compensatory Damages, and

4.  Punitive Damages.

The single available option to avoid this action is;

1.  An immediate settlement to cease and desist such treatment of HIV/AIDS

---1---

infected inmates, now and in the future;

    2.  Compensatory Damages of $1,000,000.00 (One Million Dollars) for the violation of my clearly protected Civil Rights;

    3.  Costs of this action to date.

I am enclosing a copy of the statement of claim, being finalized. The single reason you are not being served by the U.S. Marshal Service, as directed in 28 USC §1915, is that I am cautiously "exhausting such remedies as are available under 42 USC §1997e(a)." Case law follows, with my commentary.

I am, with the notification of this letter, requesting that this contact be considered the "first tier" of the grievance process. Candidly, I am quite sure that I will receive no resolution of my grievance, but as discussed in Green v. Meese, 875 F. 2d 639, 641 (7th Cir. 1989), and quoted in Alexander v. Hawk, 159 F 3d @1325 (11th Cir. 1989), in a Federal Bureau of Prisons, Bivens action;

> No doubt denial [of my grievance] is the likeliest outcome but that is not sufficient reason for waiving the requirement of exhaustion. Lightening may strike; and even if it doesn't, in denying relief the Bureau may give a statement of it's reasons that is helpful to the district court in considering the merits of the claim.

Fortuitously, as an inmate transferred to the Elmore County Jail, as a Federal Bureau of Prisons ("BOP") inmate in holdover, this issue has been clearly resolved by the largest of all "jailers" in America, the BOP.

In the Policy/Program Statement BP 6190.03 Page 13, the BOP clearly states;

> **[Except as provided in our disciplinary policy, no special or separate housing units may be established for HIV-positive inmates.]**
> (Bold was not added for effect, Bold was used in the Statement)

Further to pointing out to the Elmore County Jail, the policy, custom and practices, that were contemporaneous at Plymouth Rock with the arrival of the Puritans in 1620, nearly 400 years ago, and the murder and banishment of "witches", so the tradition continues at the Elmore County Jail. Faggots with HIV/AIDS, rather than suffer the damages I incurred, might as well be burned

at the stake in Alabama.  That is the origination of the term faggot, ironically enough.  However, this is not 1680, Salem, Mass.  This is the United States of America, and the year is 2006.

The issue has been resolved for nearly two decades among any forward thinking penological institutions, of those with even a modicum of profess-ionalism.  Pointing to Federal documents, I rely first on the pamphlet, printed in 1988, and sent to every American household.[1]  Why would the Federal government go to such an expense to advise, inform, and enlighten those literate enough to read the brochure?  So that the country would understand this syndrome.  So the country would be empowered to realize and understand that HIV/AIDS cannot be caught from a toilet seat, from sharing food with a FAG, by kissing, by sharing a community cooler.  In fact, not a single concern of the facility, addressing the ignorance of staff and inmates, in the Elmore County Jail, was valid.  For no penological purpose was I provided a thermos/cooler with the words "Black Tie" and iconic black bowties drawn onto the surface.  For no penological purpose was I provided a tray, containing the same drawings, that was to be placed in a clear plastic bag after I used such tray.  For no penological purpose purpose was I placed in "scarlet red" medical scrubs, when all the other inmates were given orange outfits.  For no penological purpose was I singled out among a group of predatorial, potentially violent felons, for the purpose of "keeping them from catching AIDS".  It is my assertion and my responsibility to prove that the Elmore County Jail, in it's perpetuation of ignorance, and prejudice, did violate my rights and do so for absolutely no penological purpose.

---

[1] United States Department of Health and Human Services, Pub. No. (CDC) HHS 088-0404, "Understanding AIDS", P. 2 (1988) - Glick v. Henderson 855 F.2d 536, 539. Attached as exhibit "A"

The concept of this litigation is that my rights as an inmate to privacy, and to safe and secure surroundings have been clearly violated. That such violations were declared unlawful by the Civil Rights Act of 1871, also known as a §1983 violation. That further violations have occurred by the Jail, in violating the Americans with Disabilities Act ("A.D.A."), 42 USC 12100 et. seq. That as far back as 1988, the Federal government spent an incredible sum to send a pamphlet, exposing the ignorance of those in the United States to the methods of "catching" the HIV/AIDS virus. This pamphlet has been referred to heretofore in this correspondence. Further to support of the anachronistic and unlawful custom, practice and policy of the Elmore County Jail, is the 1992 lawsuit in the Western District of New York, citing Nolley v. County of Erie 802 F. Supp. 898 (W.D.N.Y. 1992) Annotations of the Nolley case, suggest that punitive damages were awarded for "unwarranted disclosure of HIV-positive status" in violation of privacy rights, segregation based upon her HIV status. In Nolley, the "red sticker" policies violated plaintiff's Constitutional Right to privacy under 42 USC §1983, Nolley 776 F. Supp. @ 743. I would remind the Defendant's that the Elmore County Jail, did not have a "red sticker" policy on medical records, the Elmore County Jail, dressed, and dresses and will continue to dress out, inmates in "red medical scrub outfits", without the intervention by a court, unless the Defendants are amenable to an immediate policy change. Defendants may raise a defense, that "red medical scrub outfits" are used for any communicable disease. This defense was raised in the Nolley case, and as such being decided by Judge Curtin, we quote the New York law, regarding this issue;

> "Confidential HIV-related information" means any information, in the possession of a person who provides health or social services or who obtains the information pursuant to a release of confidential HIV-related information concerning whether an individual has been the subject of an HIV-related test, or has HIV infection, HIV-related illness or AIDS, **or information which identifies or reasonably could identify an individual as having one or more conditions, including information pertaining to such conditions,** including information pertaining to such individuals contacts. (N.Y.C.R.R. §7064.2(g))

---4---

Thus, pursuant to the COC regulations, if the placement of a red sticker on an inmate's documents and other items identified or "reasonably could [have] identif[ied] an individual" as being HIV-positive, their HIV confidentiality would have been breached.

This is exactly what occurred at the Elmore County Jail. I was placed in a "red medical scrub outfit". I was ostracized from the group, yet still accessible for potential violent offenders who might choose to "beat the queer out of me". Whether I was required to wear a placard around my neck saying "I am a fag with AIDS", or wear a scarlet outfit, I was made to be clearly known to the group as a "FAG with AIDS".

Clearly established law, tells the State of Alabama, and the County of Elmore that this behavior by the customs, policies and practices is unlawful. That the County Attorney who is responsible for promulgation of such regulations, is personally responsible for such customs, practices and policies. That Warden Aja Roberts is personally responsible for the enforcement of such municipal customs, practices and policies. That the Corrections Officers being untrained in communicable diseases, by the community was personally responsible for the enforcement of such anachronistic customs, practices and policies, knowing fully well that such treatment of an inmate, in the 21st Century, in the United States of America must be unlawful.

Is an award appropriate even in the absence of physical injury? I cite Daskalea v. District of Columbia 227 F. 3d 433 @ 444 (D.C. Cir. 2000), quoting Gray v. Spillman 925 F. 2d 90 @ 94 (4th Cir. 1991).

> "even in the absence of physical injury," plaintiff may prove actual damages under §1983 "based on injuries such as 'personal humiliation' and 'mental anguish and suffering'"

In closing, I request the inmate handbook not provided to me at the time of entry into the Jail. I am quite certain that is a violation of Alabama law. However, that is not why we are here. We are here to foreclose any

possible defense, under the PLRA, whereby dismissal, with or without prejudice might occur. For that I need the handbook, and of course the method of advancing, to a Tier 2, 3, and if required a Tier 4 filing.

If the Jail, were to be forward thinking enough, they could consider waiving this requirement.[2] When the time arrives for the damages portion of my expected judgement, the Court and the jury might look very favorably upon two things;

1. That the facility waived administrative remedies, and would not move to dismiss for failure to exercise such remedies, and

2. Immediately cease and desist the barbaric practice of ostracizing inmates with HIV/AIDS. That the facility immediately stop violating the Health Information Patient Portability Act ("H.I.P.P.A.") regulations and medical privacy laws and the Americans with Disabilities Act ("A.D.A."). That the facility cease and desist violating the Civil Rights of inmates infected with HIV/AIDS, under the Federal statute 42 USC §1983.

Quoting Daskalea v. District of Columbia 227 F. 3d @ 450;

> ... forced naked dancing, and other indignities borne by Sunday
> Daskalea at the District of Columbia Jail are "simply not part
> of the penalty that criminal offenders pay for their offenses
> against society." Farmer v. Brennan 511 U.S. 825, 834, 114 S. Ct.
> 1970, 128 L.Ed.2d 811 (1994).

Govern yourselves accordingly.

Jeremiah W. Green

---

[2] Note in Elwood v. Jeter 386 F. 3d. 847 and Woodall v. Federal Bureau of Prisons 432 F. 3d. 235, the government was intelligent enough to realize that as a result of illegally and unlawfully enforcing a statute, the Defendant's waived exhaustion of remedies as a defense. I ask that Elmore County Jail, as first step, follow the direction of the BOP, and voluntarily waive this defense. Showing such good faith as in Nolley v. County of Erie 802 F. Supp. 898 (W.D.N.Y. 1992), resulted in vacating the Punitive Damages award by Senior Judge Curtin. Your immediate concurrence will alleviate this pointless exercise.

Jeremiah W. Green, Reg. No. 11165-171
Federal Prison Camp Atlanta
Post Office Box 150160
Atlanta, Georgia 30315-0160

May 23, 2006

Elmore County Jail
Attn: Aja Roberts, Warden
8955 US Highway 231
Wetumpka, Alabama 36092

RE:   Jeremiah W. Green
      USMS Reg. No. 11165-171

Dear Warden Aja Roberts,

     This letter will serve as my final contact to you, the County of Elmore,
and the Corrections Officers employed by your institution.  In my last letter,
dated, May 08, 2006, you were advised of my intent to file suit against you,
the County of Elmore and four of the Corrections Officers employed by your
institution.  Said letter and the enclosed copy of proposed Statement of Claim
were delivered via Certified US Mail on May 11, 2006 and signed for by an agent
of the Elmore County Jail.  A copy of US Postal Form 3811, Domestic Return Receipt,
has been enclosed.

     There is no doubt that my intentions were made clear during my last contact.
However, your lack of response to my letter, which was clearly intended as my
"First Tier" of the grievance process, only further solidifies my decision to
seek preliminary and permanent injunctive relief, as well as, compensatory and
punitive damages for the positively unlawful custom, practice and policy of
the Elmore County Jail.  As outlined in said letter, this suit will be directed
at all parties in both their personal and official capacities.

     Your failure to provide an immediate response and settlement will cause
filing this suit which includes violations of my Civil Rights, the Americans
with Disabilities Act ("A.D.A."), and the Health Information Patient Portability
Act ("H.I.P.P.A.").  Failure to respond with a proposed settlement, postmarked,
on or before, Thursday, June 08, 2006, will waive your opportunity to resolve
this matter amicably.  I expect your response promptly.

           **EXHIBIT D**                           Regards,

                                        Jeremiah W. Green

                                        Jeremiah W. Green

Attachments: 7

ELMORE COUNTY WATER COOLER



12 inches =

6 inches =

EXHIBIT E

ELMORE COUNTY JAIL FOOD TRAY



24 inches

18 inches

1 inch = 4 inches

UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

JEREMIAH W. GREEN,                       :
                                         :
        Plaintiff,                       :
                                         :
v.                                       :     CIVIL ACTION NO.
                                         :     2:06-CV-667-WKW-VPM
ELMORE COUNTY JAIL, et at.,              :
                                         :
        Defendants.                      :

DECLARATION UNDER PENALTY OF PERJURY
OF HARVEY SHENBERG

    I, Harvey Shenberg, being competent to make this declaration and having personal knowledge of the matters stated therein, declares pursuant to 28 U.S.C. §1746, that:

    1.  I am a Federal Bureau of Prisons inmate, having been in the custody of the Attorney General since 1997.

    2.  During a transfer to a Federal Prison Camp, a security level downgrade earned from a decade of perfect behavior, I was designated to the Federal Prison Camp Montgomery.  However, due to facts that I am not aware of, the Federal Prison Camp Montgomery was unable to meet my needs as an inmate.

    3.  On April 04, 2006, I was taken from the Federal Prison Camp Montgomery to the Elmore County Jail.

    4.  Upon arrival at the Elmore County Jail, I was "dressed out" in an orange jail uniform.

    5.  My "pod" contained approximately thirty (30) other inmates, two of them were known Federal inmates.

6.   I saw other Federal inmates who I knew or were identified as such.

7.   All inmates were dressed in <u>orange</u> jail uniforms.

Pursuant to 28 U.S.C. §1746,[1] I declare under penalty of perjury that the foregoing is true and correct.   Executed this 7th day of November, 2006.

Harvey Shenberg
Fed. Reg. No. 37430-004
Federal Prison Camp Atlanta
Post Office Box 150160
Atlanta, Georgia 30315-0160

---

[1]   In lieu of the absence of a Notary Public at the Federal Prison Camp Atlanta, I request that this Honorable Court accept this declaration until such time as a sworn affidavit can be affirmed by a Notary Public.