UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

JEREMIAH W. GREEN,          :

    Plaintiff,        :

                      :

v.                    :    CIVIL ACTION NO.

                      :    2:06-CV-667-WKW-VPM

ELMORE COUNTY JAIL, et al.,    :

                      :

    Defendants.       :

## PLAINTIFF'S PRELIMINARY RESPONSE
## TO DEFENDANT ROBERTS' SPECIAL REPORT

COMES NOW, Jeremiah W. Green, Plaintiff in the above-styled cause, and submits his Preliminary Response to Defendant Roberts' Special Report to the Court.

### INTRODUCTION

The Plaintiff begins this Preliminary Response by apologizing to the Court for such brevity. Work on this response commenced on Wednesday, November 01, 2006, and is limited to very few hours to meet the deadline of November 08, 2006. Plaintiff having respectfully requested the opportunity to amend his filings with a reasonable extension of time, Plaintiff asserts that further research and support will be forthcoming to the following preliminary representations.

### PLAINTIFF'S RESPONSE CONTRADICTING ASSERTED "FACTS"

Defendant's counsel has referred to Wright & A. Miller, Federal Practice and Procedure, Defendant Roberts' Special Report (hereinafter "Roberts Report"), p. 39 at ¶1, "A reviewing court need not 'swallow [Defendant's] invective hook, line and sinker...'"

Further, the standard for Summary Judgment requires the Court to view the evidence in the light most favorable to the Plaintiff. Greason v. Kemp, 891 F.2d 829, 831. Further, Defendant's counsel refers to "favoring... 'evidence supporting the moving party that is uncontradicted or unimpeached, at least to the extent that that evidence comes from disinterested witnesses.'"

Plaintiff is incarcerated on a compound with approximately 500 other Federal inmates. Within a short period of time after receiving Roberts Report, id., Plaintiff secured a disinterested witness, who was incarcerated at the Elmore County Jail as a Federal inmate in transit, like Plaintiff, two months after the Plaintiff was in custody of the Elmore County Jail. Such witness, a 27-year veteran attorney and former Dade County Judge, has provided a Declaration under 28 U.S.C. §1746, contradicting Warden Sue/Aja Roberts. Incontrovertibly inmate Shenberg, a Federal inmate, was dressed in orange, as were all other Federal inmates he knew or came into contact with while at the Elmore County Jail.

In all respect to the Court, if Plaintiff was entitled to the discovery that might have developed sworn statements, or declarations from the officers who dressed Plaintiff in the red medical scrubs, or from the Federal inmates incarcerated the evening of February 21, 2006, then the Court would have a deep enough pool of disinterested witnesses to determine what the reality was regarding dressing the Plaintiff in red medical scrubs.

The second major contradiction Plaintiff of Defendant Roberts "FACTS" is the representation by Defendant Roberts as to inmates

being provided with jail handbooks.  Whether Plaintiff received
a handbook or not, which he did not, 28 CFR §40.3 requires there
to be a verbal/oral explanation of the inmate grievance procedure.
This issue is only somewhat germane.  The indisputable fact remains,
attached and annexed as Plaintiff's Exhibit's C and D, are the
first and second letters addressed to Defendant Sue/Aja Roberts,
Warden of Elmore County Jail; the first letter, Certified United
States Mail Article No. 7003 1680 0005 1212 3061, was signed for
by one Michael Tempton/Templon (illegible) on May 11, 2006, and
the second letter, delivered by United States Mail following its
mailing on May 23, 2006.  Plaintiff attempted to exhaust his
administrative remedies.  Defendant Roberts denied Plaintiff all
access to the Administrative Remedy Program, thus precluding the
Elmore County Jail and Defendant Roberts from using "failure to
exhaust" as an affirmative defense.

The third major contradiction by Plaintiff of Defendant
Roberts "FACTS" is the representation by Defendant Roberts in the
Affidavit of Sue Roberts (hereinafter "Roberts Affidavit"), p. 1
at ¶4, "I did not become aware of the allegations made the basis
of Mr. Green's Complaint until I was served with the Complaint
in this action."  Plaintiff notified Defendant Roberts on two
separate occasions, and on both occasions made his complaint very
clear.  See Plaintiff's Exhibit's C and D.

Among the most critical issues to adjudicate,is the difference
in perception between Plaintiff and Defendant Roberts as to the
"subtlety" of the lettering on the food tray and water cooler

the Plaintiff was required to use and possess.  Please note Plaintiff's Exhibit E, attached and annexed herein, as a drawing, to scale, of the food tray and water cooler with the "subtle" lettering as represented by Defendant Roberts.  This is an issue that in a rush to judgment could not be resolved by summary judgment.

Summarizing the above contradictions the Plaintiff asks, how is it possible that every inmate in the "pod" knew Plantiff was HIV-positive, if the red clothing went to all Federal inmates? Are all Federal inmates, then, "Fags with AIDS?"  How is it possible if the red clothing were not a "flag" that all Federal inmates wore red, then was it the "subtle" lettering on the food tray, which the Plaintiff was forced to place into a plastic garbage bag in front of the "pod", or was it the unique water cooler that made Plaintiff so obviously a "Fag with AIDS?"  How is it that the Plaintiff can exhaust administrative remedies when he was not provided with a jail handbook, nor a verbal briefing on the Admin- istrative Remedy Program, and the Plaintiff's requests to the Warden are ignored?  Finally, how is it that Warden Sue/Aja Roberts had no knowledge of the Plaintiff's complaints when she received two very detailed letters via the United States Postal Service? It is Plaintiff's assertion that Defendant Sue Roberts and the customs, practices, and policies of the Elmore County Jail are dangerously discriminatory to those inmates with HIV/AIDS.

## DISCUSSION OF LAW

1. Defendant Sue Roberts is not immune under Alabama law due to the exceptions of the 14th amendment, the ADA, and Interstate Commerce Clause.

---4---

Defendant's counsel has cited <u>Carr v. City of Florence, Ala.</u>, 916 F.2d 1521 (11th CA 1990), rehearing denied, 925 F.2d 1477 (11th CA 1991).   The <u>Carr</u> court outlined two major exceptions to a State's Eleventh Amendment immunity.

First, Congress can abrogate Eleventh Amendment immunity without the States consent when it acts pursuant to the enforce- ment provision of Section 5 of the 14th Amendment. <u>Atascadero State Hospital v. Scanlon</u>, 473 US 234, 87 LEd.2d 171 (1985).

In <u>PA Department of Corrections v. Yeskey</u>, 141 LEd.2d 215 (1998), the court established that an inmate with a disability is required to participate in all benefits or programs in a state prison.   Defendant Roberts has established that the Elmore County Jail is an instrumentality of the State of Alabama.   The discrim- ination shown to Plaintiff with his scarlet colored "garb" and his vividly marked food tray and his exclusive water cooler is an ADA violation, if Plaintiff is a qualified handicapped person.

Is Plaintiff a qualified handicapped person?   The answer is before this Court, answered by the Supreme Court in <u>Bragdon v. Abbott</u>, 141 LEd.2d 540 (1998)

Decision:  Dental patients <u>asymptomatic</u> HIV infection held to be a disability under ADA, 43 U.S.C. §12102(2)(A)

Plaintiff is not asymptomatic, as in the initial stages of HIV infection, Plaintiff is symptomatic, as in the end stages of HIV infection - better known as full blown AIDS.

The Federal Bureau of Prisons and the United States Marshal Service, agencies of the United States Department of Justice, contract, without question for the housing of prisoners, across state lines.   The movement of prisoners as serfs of the Department

of Justice affects interstate commerce.  Although this issue was
not decided in Yeskey, id., Plaintiff believes that the Eleventh
Amdendment sovereign immunity of Alabama has been abrogated by
the contract between the Department of Justice and the Elmore
County Jail.  As such, the continuing discovery by Plaintiff into
the contracts between the Department of Justice and the Elmore
County Jail is critically necessary.

Plaintiff points to the Code of Federal Regulations ("CFR")
Chapter 28 sections 35, 36, 37, 39 and 40.  28 CFR §35.130;

> (a) No qualified individual with a disability shall on the
> basis of disability, be excluded from participation in or
> be denied the benefits of the services, programs or activ-
> ities of a public entity, or be subjected to discrimination
> by any public entity.
>
> (b)(1) A public entity, in providing any aid, benefit, or
> service, may not, directly or through contractual, licensing
> or other arrangements, on the basis of disability...

In 28 CFR §35.104;

> (4)  Disability means, with respect to an individual, a
> physical or mental impairment that substantially limits
> one or more of the major life activities of such individual;
> a record of such impairment; or being regarded as having
> such impairment.
>
> (1)(ii)  The phrase physical or mental impairment includes,
> but is not limited to... HIV disease (whether symptomatic
> or asymptomatic)

Further at 28 CFR §40.1 et. seq., Minimum Standards for
Inmate Grievance Procedures; 28 CFR §40.3;

> The written grievance procedure shall be readily available
> to all employees and inmates of the institution.  Additionally,
> each inmate and employee shall, upon arrival at the institution,
> receive written notification and an oral explanation of the
> procedure...

At 28 CFR §40.11;

> An application for certification of a grievance procedure
> under the Act shall be submitted to the Office of the Attorney
> General, U.S. Department of Justice, Main Justice Building,

Washington, DC 20530, and shall include a written statement describing the grievance procedure, a brief description of the institution or institutions covered by the grievance procedure...

The placement of this application in the U.S. Mail invokes the Interstate Commerce Clause. The benefit of the contract with the United States Marshal Service and the Federal Bureau of Prisons inures to the County of Elmore. As a result the implicit abrogation of the sovereign immunity of the State of Alabama occurs when the first Federal inmate arrives at the Elmore County Jail. This issue is discussed in length in Poarch Band of Creek Indians v. State of Alabama, 776 F.Supp. 550 (S.D. AL 1991) at 556 referring to the Parden v. Terminal Railway, 377 U.S. 184, 84 S.Ct. 1207, 12 LEd.2d 233 (1964) The Court held that "Alabama, when it began operation if an interstate railroad approximately 20 years after enactment of the FELA (ADA), necessarily consented to such suit as was authorized by that Act." Id. at 192, 84 U.S. at 1213. Thus, under Parden, when a state chooses to engage in a business that is regulated by the Federal Government pursuant to the Commerce Clause of the Federal Constitution, that state is deemed to have consented to the federal regulation that comes with the territory - including lawsuits by private parties.

## 2. Plaintiff has exhausted all "available" administrative remedies in compliance with 42 U.S.C. §1997e(a).

The Prison Litigation Reform Act, 42 U.S.C. §1997e(a) specifically advises inmates that with failure to exhaust administrative remedies inmates are precluded jurisdictionally from accessing the United States District Courts. Plaintiff is

absolutely clear on the intent, meaning and purpose of exhaustion.
All seven points; a litigable record, the ability to secure redress
without wasting limited and precious judicial resouces, are among
some points. Plaintiff attempted to exhaust all "available" rem-
edies. First, he was not provided a handbook to be reviewed,
which in the following case has been deemed as failure of the
facility to honor the administrative remedy process. In Griffith
v. Selsky, 325 F.Supp.2d 247 (W.D.N.Y. 2004), the inmate made a
"reasonable attempt" to exhaust administrative remedies and such
attempts satisfied the requirements due to officers impeding or
preventing his efforts. However, Plaintiff asserts a case, most
on point is that of Dale v. Lappin, 376 F.3d 652 (7th Cir. 2004).
In Dale, id., at 654, Dale "requested grievance forms." He was
told that the time limit had passed, and his only recourse was
a TORT action under FTCA. At Dale, id., at 655, the Dale court
discusses the "rules" for the affirmative defenses of failing to
exhaust. That is the defendant has the burden of proving and
pleading that such exhaustion did not occur. Plaintiff has made
as part of the record, a certified letter sent to Warden Sue/Aja
Roberts, signed for on May 11, 2006, by an agent for the Elmore
County Jail. Attached as Plaintiff's Exhibit C. It is beyond
dispute that Plaintiff requested the available remedies, and was
ignored. It is beyond dispute that such preclusion from accessing
available remedies is a non-affirmation of the defense. It is
therefore Plaintiff's assertion that Plaintiff attempted to
exhaust all available remedies under the PLRA.

Plaintiff asserts that the "perfect" case to be cited is Miller v. Norris, 247 F.3d 736 (8th Cir. 2001). In Miller, the inmate left State custody, as did Plaintiff, and headed to Federal custody, as did Plaintiff. Miller had written to the Arkansas Department of Corrections for grievance forms, as did Plaintiff. The Arkansas Department of Corrections, nor the Elmore County Jail responded. Miller sent his letter via Certified U.S. Mail, as did Plaintiff Green. The 8th Circuit, id., at 740, noted;

> [8] We also conclude, however, that Mr. Miller alleged facts in his motion that may estabilish compliance with the statutory exhaustion requirement...
>
> [9] We believe that a remedy that prison officals prevent a prisoner from "utiliz[ing]" is not an "available" remedy under §1997e(a), and that Mr. Miller's allegations raise inference that he was prevented from utilizing the prisons administrative remedies.

Plaintiff Green has exhausted all "available" administrative remedies, just like Booth v. Churner, Woodford v. Ngo, and Miller v. Norris, discussed.

## CONCLUSION

Defendant's counsel says everything with his Storck v. City of Coral Springs, 354 F.3d 1307, reference at 1318; "Unless a government agent's act is so obviously wrong, in the light of pre-existing law, that only a plainly incompetent officer or one who was knowingly violating the law would have done such a thing, a government actor has immunity from suit."

It is Plaintiff's assertion that Defendant Roberts, the Sheriff Bill Franklin, and the jailers knew that which they did was a violation of law, or that they are so incompetent that the results are plain.

**WHEREFORE,** the Plaintiff respectfully requests that this Honorable Court deny Defendant Roberts Motion for Summary Judgment, and requests affirmation of the previously filed Motions for Extension of Time, Compelling the complete Special Report of Defendant Sue Roberts and Discovery requests.  Plaintiff also requests this Honorable Court to permit the Plaintiff to amend this Preliminary Response to the Defendant's incomplete Special Report.

Respectfully Submitted this 7th day of November, 2006.

```
                              Jeremiah W. Green, Plaintiff
                              Federal Reg. No. 11165-171
                              Federal Prison Camp Atlanta
                              Post Office Box 150160
                              Atlanta, Georgia 30315-0160
```

### CERTIFICATE OF SERVICE

I, Jeremiah W. Green, hereby certify that on this 7th day of November, 2006, I have served the foregoing document on the following person(s):

```
            Mr. C. Richard Hill, Jr.
        Attorney for Defendant Sue Roberts
              WEBB & ELEY, P.C.
            Post Office Box 240909
         Montgomery, Alabama 36124-0909
```

by placing a true and correct copy of the foregoing in the prison mailing system mailbox located at the Federal Prison Camp Atlanta, postage prepaid, on this 7th day of November, 2006.

```
                              Jeremiah W. Green, Plaintiff
                              Federal Reg. No. 11165-171
                              Federal Prison Camp Atlanta
                              Post Office Box 150160
                              Atlanta, Georgia 30315-0160
```

---10---

UNITED STATES POSTAL SERVICE
MONTGOMERY AL 361

11 MAY 2006 PM 3 L

First-Class Mail
Postage & Fees Paid
USPS
Permit No. G-10

• Sender: Please print your name, address, and ZIP+4 in this box

JEREMIAH W. GREEN

REG # 11165-171

FEDERAL PRISON CAMP ATLANTA

POST OFFICE BOX 150160

ATLANTA, GEORGIA 30315-0160

S8-182

0160   BOSO

---

| SENDER: *COMPLETE THIS SECTION* | COMPLETE THIS SECTION ON DELIVERY |
|---|---|
| ■ Complete items 1, 2, and 3. Also complete item 4 if Restricted Delivery is desired.<br>■ Print your name and address on the reverse so that we can return the card to you.<br>■ Attach this card to the back of the mailpiece, or on the front if space permits. | A. Signature<br>X _Michael_ ☐ Agent ☐ Addressee<br>B. Received by ( *Printed Name*)   C. Date of Delivery<br>Michael Fenton   5-11-06 |
| 1. Article Addressed to:<br><br>THE ELMORE COUNTY JAIL<br>ATTN: AJA ROBERTS, WARDEN<br>8955 US HIGHWAY 231<br>WETUMPKA, ALABAMA  36092 | D. Is delivery address different from item 1? ☐ Yes<br>If YES, enter delivery address below: ☐ No |
| | 3. Service Type<br>XX Certified Mail ☐ Express Mail<br>☐ Registered ☐ Return Receipt for Merchandise<br>☐ Insured Mail ☐ C.O.D.<br>4. Restricted Delivery? (*Extra Fee*) ☐ Yes |
| 2. Article Number<br>(*Transfer from service label*) | 7003 1680 0005 1212 3061 |
| PS Form 3811, August 2001 | Domestic Return Receipt   102595-01-M-0381 |

EXHIBIT C

Jeremiah W. Green, Reg. No. 11165-171
Federal Prison Camp Atlanta
Post Office Box 150160
Atlanta, Georgia 30315-0160

May 08, 2006

Elmore County Jail
Attn: Aja Roberts, Warden
8955 US Highway 231
Wetumpka, Alabama 36092

RE:  Jeremiah W. Green
     USMS Reg. No. 11165-171

Certified US Mail, R.R.R., No. 7003 1680 0005 1212 3061

Dear Warden Aja Roberts,

I contact you for the express purpose of providing to you, the County of Elmore, and the Corrections Officers, an opportunity to modify the custom, practice and policy of the Elmore County Jail.  In complying with the Prisoner Litigation Reform Act, ("PLRA"), I am of the opinion that due to the single night stay I had as a BOP remand, inmate, that such administrative remedy exhaustion as required is irrelevant.  I make that claim for several reasons, none of which are germane for purposes of this letter.  What is important is that you are made very clear, that;

1.  I require for my records an inmate handbook from the Elmore County Jail, for a record of the administrative remedy exhaustion process under Alabama State law.

2.  That failure to settle the damages incurred by me on February 21, 2006 and February 22, 2006, I will be suing for, preliminary and permanent injunctive relief for all inmates situated such as me, now and in the future, to avoid the barbaric, puritanical, and parochial treatment of all HIV/AIDS infected inmates,

3.  Compensatory Damages, and

4.  Punitive Damages.

The single available option to avoid this action is;

1.  An immediate settlement to cease and desist such treatment of HIV/AIDS

---1---

infected inmates, now and in the future;

    2.  Compensatory Damages of $1,000,000.00 (One Million Dollars) for the violation of my clearly protected Civil Rights;

    3.  Costs of this action to date.

I am enclosing a copy of the statement of claim, being finalized.  The single reason you are not being served by the U.S. Marshal Service, as directed in 28 USC §1915, is that I am cautiously "exhausting such remedies as are available under 42 USC §1997e(a)."  Case law follows, with my commentary.

I am, with the notification of this letter, requesting that this contact be considered the "first tier" of the grievance process.  Candidly, I am quite sure that I will receive no resolution of my grievance, but as discussed in Green v. Meese, 875 F. 2d 639, 641 (7th Cir. 1989), and quoted in Alexander v. Hawk, 159 F 3d @1325 (11th Cir. 1989), in a Federal Bureau of Prisons, Bivens action;

> No doubt denial [of my grievance] is the likeliest outcome but that is not sufficient reason for waiving the requirement of exhaustion. Lightening may strike; and even if it doesn't, in denying relief the Bureau may give a statement of it's reasons that is helpful to the district court in considering the merits of the claim.

Fortuitously, as an inmate transferred to the Elmore County Jail, as a Federal Bureau of Prisons ("BOP") inmate in holdover, this issue has been clearly resolved by the largest of all "jailers" in America, the BOP.

In the Policy/Program Statement BP 6190.03 Page 13, the BOP clearly states;

> **[Except as provided in our disciplinary policy, no special or separate housing units may be established for HIV-positive inmates.]**
> (Bold was not added for effect, Bold was used in the Statement)

Further to pointing out to the Elmore County Jail, the policy, custom and practices, that were contemporaneous at Plymouth Rock with the arrival of the Puritans in 1620, nearly 400 years ago, and the murder and banishment of "witches", so the tradition continues at the Elmore County Jail.  Faggots with HIV/AIDS, rather than suffer the damages I incurred, might as well be burned

at the stake in Alabama. That is the origination of the term faggot, ironically enough. However, this is not 1680, Salem, Mass. This is the United States of America, and the year is 2006.

The issue has been resolved for nearly two decades among any forward thinking penological institutions, of those with even a modicum of profess-ionalism. Pointing to Federal documents, I rely first on the pamphlet, printed in 1988, and sent to every American household.[1] Why would the Federal government go to such an expense to advise, inform, and enlighten those literate enough to read the brochure? So that the country would understand this syndrome. So the country would be empowered to realize and understand that HIV/AIDS cannot be caught from a toilet seat, from sharing food with a FAG, by kissing, by sharing a community cooler. In fact, not a single concern of the facility, addressing the ignorance of staff and inmates, in the Elmore County Jail, was valid. For no penological purpose was I provided a thermos/cooler with the words "Black Tie" and iconic black bowties drawn onto the surface. For no penological purpose was I provided a tray, containing the same drawings, that was to be placed in a clear plastic bag after I used such tray. For no penological purpose purpose was I placed in "scarlet red" medical scrubs, when all the other inmates were given orange outfits. For no penological purpose was I singled out among a group of predatorial, potentially violent felons, for the purpose of "keeping them from catching AIDS". It is my assertion and my responsibility to prove that the Elmore County Jail, in it's perpetuation of ignorance, and prejudice, did violate my rights and do so for absolutely no penological purpose.

---

[1] United States Department of Health and Human Services, Pub. No. (CDC) HHS 088-0404, "Understanding AIDS", P. 2 (1988) - Glick v. Henderson 855 F.2d 536, 539. Attached as exhibit "A"

The concept of this litigation is that my rights as an inmate to privacy, and to safe and secure surroundings have been clearly violated. That such violations were declared unlawful by the Civil Rights Act of 1871, also known as a §1983 violation. That further violations have occurred by the Jail, in violating the Americans with Disabilities Act ("A.D.A."), 42 USC 12100 et. seq. That as far back as 1988, the Federal government spent an incredible sum to send a pamphlet, exposing the ignorance of those in the United States to the methods of "catching" the HIV/AIDS virus. This pamphlet has been referred to heretofore in this correspondence. Further to support of the anachronistic and unlawful custom, practice and policy of the Elmore County Jail, is the 1992 lawsuit in the Western District of New York, citing Nolley v. County of Erie 802 F. Supp. 898 (W.D.N.Y. 1992). Annotations of the Nolley case, suggest that punitive damages were awarded for "unwarranted disclosure of HIV-positive status" in violation of privacy rights, segregation based upon her HIV status. In Nolley, the "red sticker" policies violated plaintiff's Constitutional Right to privacy under 42 USC §1983, Nolley 776 F. Supp. @ 743. I would remind the Defendant's that the Elmore County Jail, did not have a "red sticker" policy on medical records, the Elmore County Jail, dressed, and dresses and will continue to dress out, inmates in "red medical scrub outfits", without the intervention by a court, unless the Defendants are amenable to an immediate policy change. Defendants may raise a defense, that "red medical scrub outfits" are used for any communicable disease. This defense was raised in the Nolley case, and as such being decided by Judge Curtin, we quote the New York law, regarding this issue;

> "Confidential HIV-related information" means any information, in the possession of a person who provides health or social services or who obtains the information pursuant to a release of confidential HIV-related information concerning whether an individual has been the subject of an HIV-related test, or has HIV infection, HIV-related illness or AIDS, or information which identifies or reasonably could identify an individual as having one or more conditions, including information pertaining to such conditions, including information pertaining to such individuals contacts. (N.Y.C.R.R. §7064.2(g))

---4---

Thus, pursuant to the COC regulations, if the placement of a red sticker on an inmate's documents and other items identified or "reasonably could [have] identif[ied] an individual" as being HIV-positive, their HIV confidentiality would have been breached.

This is exactly what occurred at the Elmore County Jail. I was placed in a "red medical scrub outfit". I was ostracized from the group, yet still accessible for potential violent offenders who might choose to "beat the queer out of me". Whether I was required to wear a placard around my neck saying "I am a fag with AIDS", or wear a scarlet outfit, I was made to be clearly known to the group as a "FAG with AIDS".

Clearly established law, tells the State of Alabama, and the County of Elmore that this behavior by the customs, policies and practices is unlawful. That the County Attorney who is responsible for promulgation of such regulations, is personally responsible for such customs, practices and policies. That Warden Aja Roberts is personally responsible for the enforcement of such municipal customs, practices and policies. That the Corrections Officers being untrained in communicable diseases, by the community was personally responsible for the enforcement of such anachronistic customs, practices and policies, knowing fully well that such treatment of an inmate, in the 21st Century, in the United States of America must be unlawful.

Is an award appropriate even in the absence of physical injury? I cite Daskalea v. District of Columbia 227 F. 3d 433 @ 444 (D.C. Cir. 2000), quoting Gray v. Spillman 925 F. 2d 90 @ 94 (4th Cir. 1991).

> "even in the absence of physical injury," plaintiff may prove actual damages under §1983 "based on injuries such as 'personal humiliation' and 'mental anguish and suffering'"

In closing, I request the inmate handbook not provided to me at the time of entry into the Jail. I am quite certain that is a violation of Alabama law. However, that is not why we are here. We are here to foreclose any

possible defense, under the PLRA, whereby dismissal, with or without prejudice might occur. For that I need the handbook, and of course the method of advancing, to a Tier 2, 3, and if required a Tier 4 filing.

If the Jail, were to be forward thinking enough, they could consider waiving this requirement.[2] When the time arrives for the damages portion of my expected judgement, the Court and the jury might look very favorably upon two things;

1. That the facility waived administrative remedies, and would not move to dismiss for failure to exercise such remedies, and

2. Immediately cease and desist the barbaric practice of ostracizing inmates with HIV/AIDS. That the facility immediately stop violating the Health Information Patient Portability Act ("H.I.P.P.A.") regulations and medical privacy laws and the Americans with Disabilities Act ("A.D.A."). That the facility cease and desist violating the Civil Rights of inmates infected with HIV/AIDS, under the Federal statute 42 USC §1983.

Quoting Daskalea v. District of Columbia 227 F. 3d @ 450;

> ... forced naked dancing, and other indignities borne by Sunday
> Daskalea at the District of Columbia Jail are "simply not part
> of the penalty that criminal offenders pay for their offenses
> against society." Farmer v. Brennan 511 U.S. 825, 834, 114 S. Ct.
> 1970, 128 L.Ed.2d 811 (1994).

Govern yourselves accordingly.

Jeremiah W. Green

---

[2] Note in Elwood v. Jeter 386 F. 3d. 847 and Woodall v. Federal Bureau of Prisons 432 F. 3d. 235, the government was intelligent enough to realize that as a result of illegally and unlawfully enforcing a statute, the Defendant's waived exhaustion of remedies as a defense. I ask that Elmore County Jail, as first step, follow the direction of the BOP, and voluntarily waive this defense. Showing such good faith as in Nolley v. County of Erie 802 F. Supp. 898 (W.D.N.Y. 1992), resulted in vacating the Punitive Damages award by Senior Judge Curtin. Your immediate concurrence will alleviate this pointless exercise.

Jeremiah W. Green, Reg. No. 11165 71
Federal Prison Camp Atlanta
Post Office Box 150160
Atlanta, Georgia 30315-0160

May 23, 2006

Elmore County Jail
Attn: Aja Roberts, Warden
8955 US Highway 231
Wetumpka, Alabama 36092

RE:    Jeremiah W. Green
       USMS Reg. No. 11165-171

Dear Warden Aja Roberts,

This letter will serve as my final contact to you, the County of Elmore, and the Corrections Officers employed by your institution. In my last letter, dated, May 08, 2006, you were advised of my intent to file suit against you, the County of Elmore and four of the Corrections Officers employed by your institution. Said letter and the enclosed copy of proposed Statement of Claim were delivered via Certified US Mail on May 11, 2006 and signed for by an agent of the Elmore County Jail. A copy of US Postal Form 3811, Domestic Return Receipt, has been enclosed.

There is no doubt that my intentions were made clear during my last contact. However, your lack of response to my letter, which was clearly intended as my "First Tier" of the grievance process, only further solidifies my decision to seek preliminary and permanent injunctive relief, as well as, compensatory and punitive damages for the positively unlawful custom, practice and policy of the Elmore County Jail. As outlined in said letter, this suit will be directed at all parties in both their personal and official capacities.

Your failure to provide an immediate response and settlement will cause filing this suit which includes violations of my Civil Rights, the Americans with Disabilities Act ("A.D.A."), and the Health Information Patient Portability Act ("H.I.P.P.A."). Failure to respond with a proposed settlement, postmarked, on or before, Thursday, June 08, 2006, will waive your opportunity to resolve this matter amicably. I expect your response promptly.

**EXHIBIT D**

Regards,

Jeremiah W. Green

Jeremiah W. Green

Attachments: 7

ELMORE COUNTY WATER COOLER



EXHIBIT E

ELMORE COUNTY JAIL FOOD TRAY



UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

JEREMIAH W. GREEN,                    :
                                      :
        Plaintiff,                    :
                                      :
v.                                    :    CIVIL ACTION NO.
                                      :    2:06-CV-667-WKW-VPM
ELMORE COUNTY JAIL, et at.,           :
                                      :
        Defendants.                   :

DECLARATION UNDER PENALTY OF PERJURY
OF HARVEY SHENBERG

    I, Harvey Shenberg, being competent to make this declaration
and having personal knowledge of the matters stated therein,
declares pursuant to 28 U.S.C. §1746, that:

    1.  I am a Federal Bureau of Prisons inmate, having been in
the custody of the Attorney General since 1997.

    2.  During a transfer to a Federal Prison Camp, a security
level downgrade earned from a decade of perfect behavior, I was
designated to the Federal Prison Camp Montgomery.  However, due
to facts that I am not aware of, the Federal Prison Camp Montgomery
was unable to meet my needs as an inmate.

    3.  On April 04, 2006, I was taken from the Federal Prison
Camp Montgomery to the Elmore County Jail.

    4.  Upon arrival at the Elmore County Jail, I was "dressed
out" in an orange jail uniform.

    5.  My "pod" contained approximately thirty (30) other
inmates, two of them were known Federal inmates.

6.   I saw other Federal inmates who I knew or were identified as such.

7.   All inmates were dressed in <u>orange</u> jail uniforms.

Pursuant to 28 U.S.C. §1746,[1] I declare under penalty of perjury that the foregoing is true and correct.   Executed this 7th day of November, 2006.

Harvey Shenberg
Fed. Reg. No. 37430-004
Federal Prison Camp Atlanta
Post Office Box 150160
Atlanta, Georgia 30315-0160

---

[1]   In lieu of the absence of a Notary Public at the Federal Prison Camp Atlanta, I request that this Honorable Court accept this declaration until such time as a sworn affidavit can be affirmed by a Notary Public.