UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

JEREMIAH W. GREEN,                :
                                  :
    Plaintiff,                    :
                                  :
v.                                :   CIVIL ACTION NO.
                                  :   2:06-CV-667-WKW-WC
ELMORE COUNTY JAIL, et al.,       :
                                  :
    Defendants.                   :

**PLAINTIFF'S RESPONSE TO DEFENDANT**
**ROBERTS' SPECIAL REPORT AS SUPPLEMENTED**

COMES NOW, Jeremiah W. Green, Plaintiff in the above-styled cause, and submits his Response to Defendant Roberts' Special Report, as Supplemented.

**INTRODUCTION**

1.  Defendant Roberts filed her initial and incomplete Special Report on October 25, 2006.

2.  On November 13, 2006, Plaintiff filed a Motion to Compel Defendant Sue Roberts to Comply with the Court's Order of August 17, 2006, which required submission of copies of policies, guidelines, and/or regulations on which Defendant Roberts based her assertions.

3.  In an Order issued November 15, 2006, the Court granted in part and denied in part Plaintiff's Motion to Compel Defendant Roberts to fully comply with the Court's August 17, 2006 Order. (Doc. #27)

4.  On December 12, 2006, some 13 days after the Court's November 29, 2006 deadline, Defendant Roberts submitted copies,

although minimal, of the policies, guidelines, and/or regulations on which Defendant Roberts based the assertions submitted in her October 25, 2006 Special Report and Affidavit.

5. On the evening of December 15, 2006, the Plaintiff received the Defendant's Supplemented Special Report and the aforementioned documents.

## PLAINTIFF'S RESPONSE CONTRADICTING ASSERTED "FACTS"

As Plaintiff discussed in his Preliminary Response on November 07, 2006, Defendant Roberts' assertion that all of Elmore County Jail's Federal inmates are dressed in red is not only contradicted by the Plaintiff's declaration, it is again contradicted in the declaration of Harvey Shenberg, a 27-year veteran attorney and former Dade (Miami) County Judge, who was incarcerated at the Elmore County Jail as a Federal inmate two months after the Plaintiff. Incontrovertibly, inmate Shenberg, a Federal inmate, was dressed in orange, as were all Federal inmates he knew or came into contact with while at the Elmore County Jail.

With all due respect to Defendant Roberts, the recently exposed Elmore County Jail Policy and Procedure Statement regarding "Special Clothing" also clearly contradicts Defendant Roberts' assertions. Despite the fact that Defendant Roberts "wishes to clarify in advance any potential confusion that may arise from the policies, guidelines, and/or regulations [which] accompan[ied] the Motion." the actions of the jail officials contradict both policy and the assertions of Defendant Roberts. Plaintiff Green was placed in red medical scrubs soley because

---2---

of his illness, in an effort to identify him as "contagious" and to alienate him from his fellow inmates. It is a fact that all Federal inmates are dressed in <u>orange</u> and not in <u>red</u> as Defendant Roberts asserts. Defendant Roberts is making a conscious effort to backpedal over the deliberate ostracization which would have continued to occur had Plaintiff not brought it to light before this Honorable Court.

Defendant Roberts states in her Supplemented Special Report at Pg. 2, ¶5, "the print version of the Elmore County Jail Policy and Procedure Manual has not been recently revised and republished as to reflect the current Elmore County Jail Policy and Procedure Statement regarding 'Special Clothing.' For that reason, the Elmore County Jail Policy and Procedure Statement regarding "Special Clothing" submitted with [the] Motion does not reflect the current policy and procedure of the Elmore County Jail as to the specific color of uniform to be worn by designated classes of inmates." As this Honorable Court will notice, not only is the Policy and Procedure Statement regarding "Special Clothing" not dated, none of the recently submitted policies are dated. Therefore, these documents could be as recent as the date they were submitted. All were signed by Sheriff Bill Franklin and therefore, have only been in effect since his appointment to office.

Among the most disturbing of the Plaintiff's complaints are the "black tie" meal tray and cooler which the Plaintiff was forced to possess. Defendant Roberts' assertions that these two items serve to preserve institutional order and security are laughable and the fact that the Elmore County Jail Policy and

---3---

Procedure Manual does not discuss these items at all, much less in detail, only further proves the Plaintiff's opinion. The plastic "black tie" meal tray which was required to be sealed in a clear plastic bag before it was removed from the "pod" in no way serves to preserve institutional order and security, if anything, it promotes a sense of insecurity and threatens the welfare of those who are forced to use such outlandishly discriminatory items. The tray and cooler serve as icons which catagorically violate an inmates right to privacy. Certainly no Sheriff in the 21st Century would be incompetent enough to put such verbal policies in writing.

    Plaintiff would like to direct the attention of this Honorable Court to the largest jailer in the United States, the Federal Bureau of Prisons, Plaintiff's current custodian. The Federal Bureau of Prisons currently houses approximately 200,000 inmates, all contained within approximately 150 institutions of various security levels. At no security level are inmates forced to be identified as "contagious" and at no security level are inmates required to wear different colored uniforms which label them as a danger to their fellow human beings, and at no security level are any of the thousands of HIV-positive inmates within the Federal Bureau of Prisons custody forced to carry around iconic, flag-like food trays and water coolers that do all but vocally announce "I am an AIDS carrier!" to all that are forced to witness such discriminatory acts.

    The use of such "black tie" food trays and coolers within the anachronistic walls of the Elmore County Jail, whether on a single

occasion or on a daily basis is not only blatantly discriminatory, it's barbaric. This atrocity will continue without the interference of this Honorable Court.

Defendant Roberts has made it clear that an inmate such as the Plaintiff is a "Security Risk" due to the fact that Plaintiff poses a threat to the safety and security of the inmates and jail staff. Defendant Roberts also asserts that she had no knowledge of the Plaintiff. Plaintiff would like to direct the Court's attention to the Policy and Procedure Statement for "Classification" and specifically Pg. 2, Section "C" "Special Security Risks" where in ¶1 it clearly instructs the booking officer and the shift supervisor to notify the Jail Administrator, moreover, the Defendant Sue Roberts, of any indication that an "arrestee" may be a security risk. Therefore, in the event policy was followed, Defendant Roberts would have had knowledge of the Plaintiff, his scarlet red medical scrubs and his iconic food tray and cooler, thus giving her advance knowledge of the claim before this Court.

As Plaintiff addressed in his Preliminary Response, the booking officer, nor the supervising officer issued him an inmate handbook in accordance with the policies of the jail. The Elmore County Jail Policy and Procedure Statement for "Regulations Receipt" Pg. 1 at ¶1 discusses the issuance of said handbook. Pg. 1 at ¶4 discusses that an inmate will be charged $1.00 for a handbook which is not returned upon the inmates release. Pg. 1 at ¶5 discusses that all avenues will be pursued in order to secure costs for inmate handbooks which are not returned. The Plaintiff has yet to be charged for the inmate handbook that he did not

return, solely for the fact that he was never issued a handbook in the first place, therefore there is no handbook to charge the Plaintiff for.

It is common knowledge among inmates who have ventured through the Elmore County Jail that the jail is notorious for not issuing inmate handbooks.

That which is undeniable is Plaintiff did not receive an inmate handbook upon arrival at the Elmore County Jail. Further, Plaintiff mailed two letters, the first which was sent via Certified United States Mail, Return Receipt Requested, and the second sent via United States First Class Mail, both previously submitted as Plaintiff Exhibit C and D for the Court's consideration. Further, what is established case law, is that institutions must honor the rules and regulations that are held out to inmates, and must do so properly. (Woodford v. Ngo, 05-416 (S.Ct. 2006)) In this instance, the inmate did not fail to exhaust administrative remedies, the facility is in procedural default. Plaintiff cites Brown v. Sikes, 212 F.3d 1205 (CA11 2000) where Judge Carnes penned "Pegging our thinking to the words of the statute, a grievance procedure that requires a prisoner to provide information he does not have and cannot reasonably obtain is not a remedy that is 'available' to the prisoner."

Plaintiff Green did not have access to the grievance process at the Elmore County Jail the single evening he was incarcerated there. He did however, attempt to access the grievance process at the Elmore County Jail by mailing a Certified letter, which was ignored. He then mailed a second letter to reasonably obtain the information he needed. That letter was also ignored. It is

---6---

undeniable, in Plaintiff's assertion that he has attempted to exhaust any available remedy that may have existed. It is undeniable, in Plaintiff's assertion that he has been unable to reasonably obtain the information necessary to exhaust the administrative remedies, and has been thwarted. Plaintiff Green has exhausted all "available" remedies.

The final topic Plaintiff wishes to discuss with this Honorable Court are the Defendants' claims to immunity. Irrespective of Defendants' claims to immunity, the Ex Parte Young doctrine has made it clear that when relief sought is prospective, the Eleventh Amendment will not bar suit. As to Plaintiff's requests for injunctive relief, there is no bar whatsoever. The compromise by the Ex Parte Young exception was designed to promote the supremacy of federal law by permitting suits to enjoin state officials to conform to federal law prospectively. The Young decision rested in part on the benign fiction that to the extent the official was in fact violating the U.S. Constitution, (or the ADA) (s)he could not be obedient to the state, which was assumed to be obedient to the Constitution. Apparently this seems to be true, only in the State of Alabama, in respect to Defendant Roberts' objections.

The qualifier, the question that only continuing discovery will provide to this Court and to the parties, is "Who would pay the bill if the Defendant lost?" Plaintiff respectfully asserts, yet has no absolute proof, for none could have been provided with such limited discovery, that the County of Elmore, Alabama, and the County residents that elected Sheriff Bill Franklin and all

---7---

his minions, will be the responsible payors. As such, the discussion in Regents of the Univ. of Cal. v. Doe, 517 U.S. 425, 429, 137 L.Ed.2d 55 (1997) becomes very illuminating. The dominant factor has been whether the funds to satisfy a judgment would be derived from the state's treasury, and the Supreme Court agrees that liability for a money judgment is "of considerable importance."

There are, however, five factors discussed by the Ninth Circuit of Appeals in determining whether immunity applies. Citing Doe v. Lawrence Livermore National Laboratory, 65 F.3d 771, 774 (1995); [1] Whether a money judgment would be satisfied out of state funds, [2] whether the entity performs central governmental functions, [3] whether the entity may sue or be sued, [4] whether the entity has power to take property in its own name or only in the name of the state, and [5] the corporate status of the entity. None of these questions may be answered without further discovery.

In Carr v. City of Florence, Ala., 916 F.2d 1521 (11th CA 1990), the Court presumed the Sheriff was a state official because the Plaintiff failed to present "clear evidence" that "any judgment would be paid out of the local treasury, rather than a state treasury."

Plaintiff suggests that without the benefit of ongoing discovery he will not be able to present "clear evidence" of anything. That inability to do so, strictly due to the disability of incarceration he asserts would not be furthering the cause of justice. As such he continues to request that the Defendant's Motion for dismissal be denied, and that specific items of discovery be ordered by this Court in an attempt to determine Whether the County Jail has Eleventh Amendment immunity.

As Plaintiff discussed in his Preliminary Response, a state is not immune under the Eleventh Amendment for a violation of the Americans with Disabilities Act.

**WHEREFORE,** Plaintiff has shown this Court the following;

1. Countless contradictions to Defendant Roberts' assertions which she set fourth in her Special Report of October 25, 2006, her Sworn Affidavit of October 24, 2006, and her Supplemented Special Report of December 12, 2006;

2. Numerous contradictions to the Elmore County Jail Policy and Procedure Manual;

3. That he has exhausted all "available" remedies;

4. That the question of Eleventh Amendment immunity is not resolveable at this early stage of litigation, that discovery should ensue, to determine whether the State of Alabama or the County of Elmore, Alabama, might pay any future judgment;

5. That the prospective relief requested is absolutely not procluded by any finding of Eleventh Amendment immunity;

6. That the ADA precludes the jail from any immunity, sovereign or qualified, and;

7. That an order for the parties to proceed to discovery is warranted, so Plaintiff asserts.

**RESPECTFULLY SUBMITTED,** this 14th day of January, 2007.

Jeremiah W. Green, Plaintiff
Federal Prison Camp Atlanta
Post Office Box 150160
Atlanta, Georgia 30315-0160

## CERTIFICATE OF SERVICE

I, Jeremiah W. Green, hereby certify that on this 14th day of January, 2007, I have served the foregoing document on the following person(s):

Mr. C. Richard Hill, Jr.
Attorney for Defendant Sue Roberts
WEBB & ELEY, P.C.
Post Office Box 240909
Montgomery, Alabama 36124-0909

by placing a true and correct copy of the foregoing in the prison mailing system mailbox located at the Federal Prison Camp Atlanta, postage prepaid, on this 14th day of January, 2007.

Jeremiah W. Green, Plaintiff
Federal Prison Camp Atlanta
Post Office Box 150160
Atlanta, Georgia 30315-0160