**IN THE UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF ALABAMA**
**NORTHERN DIVISION**

| | |
|---|---|
| **JEREMIAH W. GREEN,** | ) |
| | ) |
| **Plaintiff,** | ) |
| | ) |
| **v.** | )   **CIVIL ACTION NO. 2:06-cv-667-WKW-WC** |
| | ) |
| **ELMORE COUNTY JAIL, et al.,** | ) |
| | ) |
| **Defendants.** | ) |

**DEFENDANT, JAIL WARDEN SUE ROBERTS'S, REPLY**
**TO THE PLAINTIFF'S RESPONSE TO DEFENDANT'S SPECIAL REPORT**

COMES NOW Elmore County, Alabama, Jail Warden Sue Roberts, Defendant in the above-styled cause, and submits her Reply to the Plaintiff's Response to Defendant's Special Report.

**INTRODUCTION**

On October 25, 2006, Defendant Sue Roberts, Warden of the Elmore County, Alabama Jail, submitted her Special Report to this Court. See Doc. #16. In her Special Report, Warden Roberts explained at length why she is entitled to immunity to the Plaintiff's allegations or, alternatively, why the Plaintiff's claims against her are due to be dismissed. First, Warden Roberts argued that all official capacity claims against her must fail based on Eleventh Amendment immunity and because, under 42 U.S.C. § 1983, she is not a "person." Second, Warden Roberts argued that the Plaintiff's failure to comply with the Prison Litigation Reform Act (PLRA) precludes Plaintiff's prosecution of this suit. Next, Warden Roberts pointed out that she had no personal involvement in the constitutional violations alleged by the Plaintiff and, therefore, cannot be held liable for any purportedly infirm conduct or conditions. Finally,

Warden Roberts contended that she is entitled to summary judgment based on qualified immunity.

The Plaintiff filed a preliminary response to the Defendant's Special Report on or about November 13, 2006, in which the Plaintiff attempted to rebut a select few of Warden Roberts's arguments.  See Plaintiff's Preliminary Response (Doc. #20).  In addition to his preliminary response, the Plaintiff moved for an extension of time, for leave to conduct discovery, to stay proceedings, and to compel Defendant Roberts to comply with the Court's Order of August 17, 2006.  See Docs. #21, 22, 23.  This Court granted the Plaintiff's motion for an extension of time, giving him until December 7, 2006 to file a response to Defendant Roberts's Special Report (Order of November 15, 2006) (Doc. #26), granted in part and denied in part the Plaintiff's motion to compel (Order of November 15, 2006) (Doc. #27), and denied Plaintiff's motion to stay proceedings (id.) and motion for leave to conduct discovery (Order of November 15, 2006) (Doc. #25).  On December 8, 2006, the Plaintiff requested a second extension of time in which to respond to Defendant Roberts's Special Report (see Doc. #29), followed six days later by yet another motion for extension of time.  See Doc. #34.  Then, on December 20, 2006, the Court construed Plaintiff's notice to the Court as a motion for extension of time and granted said motion.  See Docs. # 38, 39.  Ultimately, on January 18, 2007, the Plaintiff filed a second Response to Defendant Roberts's Special Report.

Despite the greatly enlarged time in which to do so, the Plaintiff has failed to rebut any argument asserted by the Defendant and has been unable to present a genuine issue of material fact.  Consequently, Warden Sue Roberts is due to be granted summary judgment and all claims against her dismissed.

## DISCUSSION

**I.    ALL CLAIMS AGAINST WARDEN ROBERTS IN HER OFFICIAL CAPACITY MUST FAIL BASED ON ELEVENTH AMENDMENT IMMUNITY AND BECAUSE ROBERTS IS NOT A "PERSON" UNDER 42 U.S.C. § 1983.**

Warden Roberts argued in her Special Report that Eleventh Amendment immunity bars the Plaintiff's claims against her in her official capacity.  See Special Report (Doc. #16), p. 6; Parker v. Williams, 862 F.2d 1471, 1476 (11th Cir. 1989) (holding a sheriff sued in his official capacity is entitled to Eleventh Amendment immunity); Free v. Granger, 887 F.2d 1552, 1557 (11th Cir. 1989) (holding that a sheriff sued in his official capacity is entitled to Eleventh Amendment immunity); Carr v. City of Florence, Ala., 916 F.2d 1521, 1525 (11th Cir. 1990) (holding a deputy sheriff sued in his official capacity is entitled to Eleventh Amendment immunity); Lancaster v. Monroe County, 116 F.3d 1419, 1430-31 (11th Cir. 1997) (extending Eleventh Amendment immunity to include jailers employed by county sheriffs).  Although the Plaintiff has offered several arguments in response, none of them provide a legitimate reason to deny Defendant Roberts Eleventh Amendment immunity.  Consequently, Warden Sue Roberts is entitled to Eleventh Amendment immunity to all claims against her in her official capacity.

In his Preliminary Response to Defendant Roberts's Special Report, the Plaintiff initially addressed Warden Roberts's claim of Eleventh Amendment immunity by citing Carr v. City of Florence, Ala., 916 F.2d 1521 (11th Cir. 1990) for the proposition that there are "two major exceptions to a State's Eleventh Amendment immunity."  Plaintiff's  Preliminary Response (Doc. #20), p. 5.  As the Plaintiff correctly noted, Carr identified two exceptions to Eleventh Amendment immunity: (1) "Congress can abrogate eleventh amendment immunity without the state's consent when it acts pursuant to the enforcement provisions of section 5 of the fourteenth amendment," Carr, 916 F.2d at 1524 citing Atascadero State Hosp. v. Scanlon, 473 U.S. 234, 87

3

L. Ed. 2d 171 (1985); and (2) "a state may waive its immunity expressly through legislative enactment." Carr, 916 F.2d at 1524. However, here, as in Carr, "[n]either of these exceptions apply….Congress has not abrogated eleventh amendment immunity in section 1983 cases….The state of Alabama has not waived its immunity." Id. at 1525 (footnote and citations omitted).

Next, the Plaintiff appeared to argue – albeit unsuccessfully – that the Elmore County Jail's one-day incarceration of him, a federal prisoner, abrogated the State of Alabama's Eleventh Amendment sovereign immunity. As support for this theory, the Plaintiff cited Poorch Band of Creek Indians v. State of Alabama, 776 F. Supp. 550, 556 (S.D. Ala. 1991) and Parden v. Terminal Ry. of Alabama Docks Dep't, 377 U.S. 184 (1964). It is unclear why the Plaintiff cited Poorch Band of Creek Indians, supra, as that decision acknowledged that "Parden itself neither mentioned nor was premised upon abrogation," id. at 561, and held generally that the Eleventh Amendment barred suit against the state since Alabama had not consented to being sued and Congress lacked authority to abrogate Alabama's Eleventh Amendment immunity under the Indian commerce clause. Id.[1] Furthermore, Parden, supra, has been expressly overruled by at least two subsequent decisions of the Supreme Court. See Welch v. Texas Dep't of Highways and Public Transp., 483 U.S. 468 (1987) and College Sav. Bank v. Florida Prepaid Postsecondary Educ. Expense Bd., 527 U.S. 666 (1999) (overruling Parden and holding that sovereign immunity was neither validly abrogated by the Trademark Remedy Clarification Act (TRCA), nor voluntarily waived by the State's activities in interstate commerce); see also Beasley v. Alabama State Univ., 3 F. Supp. 2d 1304, 1314 n.4 (M.D. Ala. 1998) ("The court also recognizes that Parden has been overruled to the extent that its holding conflicts with the

---

[1] The decision of the district court in Poorch Band of Creek Indians, 776 F. Supp. 550 was affirmed by Seminole Tribe of Florida v. State of Florida, 11 F.3d 1016 (11th Cir. 1994). The decision of the Eleventh Circuit Court of Appeals in Seminole Tribe of Florida, 11 F.3d 1016 was in turn affirmed by the United States Supreme Court in Seminole Tribe of Florida v. Florida, 517 U.S. 44, 116 S. Ct. 1114, 134 L.Ed.2d 252 (1996).

requirement that Congress unequivocally state its intent to abrogate states' eleventh amendment immunity in a statute."). Therefore, to the extent the Plaintiff relies on <u>Parden</u> as authority for the proposition that the State of Alabama waived its sovereign immunity when the Elmore County Jail housed a federal prisoner for a twenty-four (24) hour period, his reliance is misplaced since the holding in <u>Parden</u> is no longer good law.

Third, in his most recent response to Defendant Roberts's Special Report, filed on January 18, 2007, the Plaintiff appeared to assert that the source of any monetary judgment paid by the Defendant would be "the County residents" and not the state treasury. <u>See</u> Plaintiff's Response (Doc. #41), pp. 7-8. For this reason, he maintained, Defendant Roberts should not be granted Eleventh Amendment immunity. However, the entitlement of an Alabama sheriff and that sheriff's deputies and jailers to Eleventh Amendment immunity, is a well-settled question of law. <u>See</u> <u>Parker</u>, 862 F.2d at 1476 (holding a sheriff sued in his official capacity is entitled to Eleventh Amendment immunity); <u>Free</u>, 887 F.2d at 1557 (holding that a sheriff sued in his official capacity is entitled to Eleventh Amendment immunity); <u>Carr</u>, 916 F.2d at 1525 (holding a deputy sheriff sued in his official capacity is entitled to Eleventh Amendment immunity); <u>Lancaster</u>, 116 F.3d at 1430-31 (extending Eleventh Amendment immunity to include jailers employed by county sheriffs). As a result, Defendant Roberts is entitled to Eleventh Amendment immunity to all claims against her in her official capacity.

Fourth, the Plaintiff argued that the Eleventh Amendment does not bar the award of prospective relief under the doctrine established by <u>Ex parte Young</u>, 209 U.S. 123 (1908). The Supreme Court recognized a few years ago that, "[t]o ensure the enforcement of federal law,…the Eleventh Amendment permits suits for prospective injunctive relief against state officials acting *in violation of federal law*." <u>Frew ex rel. Frew v. Hawkins</u>, 540 U.S. 431, 437

(2004) (emphasis added).  While it is true that the Eleventh Amendment does not bar the award of prospective relief against state officials acting in violation of federal law under the Ex parte Young doctrine, the Plaintiff has overlooked several important facts which prevent him from being granted injunctive relief *at all*.

In her Special Report, Defendant Roberts explained that the Plaintiff's request for injunctive and declaratory relief is due to be denied because his transfer on or about February 22, 2006 from the Elmore County Jail to the custody of federal prison officials in Atlanta, Georgia – where he remains incarcerated – deprived the Plaintiff of standing to seek these types of relief and rendered all such requests moot.  See McKinnon v. Talladega County, Ala., 745 F.2d 1360, 1363 (11th Cir. 1984) citing Holland v. Purdy, 457 F.2d 802 (5th Cir. 1972) (recognizing the "general rule…that a prisoner's transfer or release from a jail moots his individual claim for declaratory and injunctive relief"); see also Boxer X v. Donald, 169 Fed. Appx. 555, 559 (11th Cir. 2005) (requested injunctions against prison employees declared moot since plaintiff-prisoner was no longer housed at that prison); Roque v. Armstrong, 392 F. Supp. 2d 382, 386-87 (D. Conn. 2005) (dismissing as moot prisoner's claims for injunctive relief under ADA).

The Plaintiff is additionally ineligible to receive injunctive and declaratory relief because he has not provided any allegations to warrant the grant of such relief.  "An injunction is a 'remedy potentially available only after a Plaintiff can make a showing that some independent legal right is being infringed – if the Plaintiff's rights have not been violated, he is not entitled to any relief, injunctive or otherwise'."  Alabama v. United States Army Corps of Engineers, 424 F.3d 1117, 1127 (11th Cir. 2005) quoting Klay v. United Healthgroup, Inc., 376 F.3d 1092, 1098 (11th Cir. 2004).  Specifically, the Plaintiff must show "(1) that he has prevailed in establishing the violation of the right asserted in his complaint; (2) there is no adequate remedy at law for the

violation of this right; and (3) irreparable harm will result if the court does not order injunctive relief." United States Army Corps of Engineers, 424 F.3d at 1128 (citations omitted). As with the Plaintiff's lack of standing to seek injunctive and declaratory relief, Defendant Roberts also explained in her Special Report that the Plaintiff has not – and cannot – fulfill any of the foregoing requisites for issuance of injunctive relief.

Related to the first requisite listed above – i.e., Plaintiff must show "that he has prevailed in establishing the violation of the right asserted in his complaint" – is the requirement imposed by Ex parte Young that state officials must be "acting *in violation of federal law*" to be subject to prospective injunctive relief. Frew ex rel. Frew, 540 U.S. at 437 (emphasis added). Since filing his Complaint, the Plaintiff has simply assumed that the conduct he alleged was a violation of federal law. However, as Defendant Roberts demonstrated in her Special Report (and demonstrates again below), the Plaintiff's allegations do not state a claim for a constitutional violation, much less provide a foundation for establishing a violation of federal law. Therefore, the Plaintiff is unable to satisfy the elements necessary for injunctive and/or declaratory relief to issue. Because of his inability to satisfy those elements – particularly the requirement that he establish the violation of the right asserted in his complaint, the Ex parte Young doctrine does *not* apply.

Fifth, in her Special Report Warden Roberts conceded the existence of 42 U.S.C. § 12202, a provision of the Americans with Disabilities Act (ADA) which abrogates Eleventh Amendment immunity typically granted States. See Special Report, pp. 32-33. She added, however, that the Supreme Court, in United States v. Georgia, 541 U.S. 151, 126 S. Ct. 877 (2006), held that "insofar as Title II creates a private cause of action for damages against the States for conduct that *actually* violates the Fourteenth Amendment, Title II validly abrogates

state sovereign immunity." Id. at 882; see also Leverette v. Alabama Revenue Dep't, 453 F. Supp. 2d 1340, 1345 (M.D. Ala. 2006) (finding that, "with Title II, Congress did not validly abrogate sovereign immunity with regard to state-employment discrimination against the disabled"); Williamson v. Georgia Dep't of Human Resources, 150 F. Supp. 2d 1375 (S.D. Ga. 2001) (concluding that court lacked subject-matter jurisdiction because Congress failed to validly abrogate State's Eleventh Amendment immunity in Title II context). In other words, a state's sovereign immunity is abrogated by 42 U.S.C. § 12202 only to the extent the alleged conduct of the state or state official "*actually* violates the Fourteenth Amendment." Id. The Plaintiff has not begun to establish the violation of a right arising under or guaranteed to him by the Fourteenth Amendment. Consequently, Warden Roberts is entitled to Eleventh Amendment immunity from all claims against her in her official capacity under Title II of the ADA.

Finally, as discussed in the Defendant's Special Report, the official capacity claims against Warden Roberts are due to be dismissed because 42 U.S.C. § 1983 prohibits a *person*, acting under color of law, from depriving another of his rights secured by the United States Constitution. 42 U.S.C. § 1983 (emphasis added). The United States Supreme Court has held that a state official, in his or her official capacity, is not a "person" under § 1983. Will v. Michigan Dep't of State Police, 491 U.S. 58, 71 (1989). Any claims against Warden Roberts in her official capacity should be dismissed because she is not a "person" under § 1983; as a result, all claims against her in her official capacity fail to state a claim upon which relief can be granted. Id.; Carr, 916 F.2d 1521, 1525 n.3.

## II. THE PLAINTIFF'S FAILURE TO COMPLY WITH THE PRISON LITIGATION REFORM ACT AND LACK OF PHYSICAL INJURY BAR HIS COMPLAINT.

The Plaintiff's Complaint is barred under the Prison Litigation Reform Act (PLRA) for at least two reasons. First, the Plaintiff failed to affirmatively demonstrate his exhaustion of all available administrative remedies at the Elmore County Jail. Second, the Plaintiff does not allege that he suffered a *physical injury*. Because of these glaring deficiencies, the Complaint is barred and due to be dismissed.

Warden Roberts's Special Report discussed the exhaustion requirement under the Prison Litigation Reform Act (PLRA). See 42 U.S.C. § 1997e(a); Porter v. Nussle, 534 U.S. 516, 532 (2002); Johnson v. Meadows, 418 F.3d 1152, 1155 (11th Cir. 2005); Brown v. Sikes, 212 F.3d 1205, 1207 (11th Cir. 2000). The Plaintiff admits that he is familiar with the PLRA's exhaustion requirement. See Plaintiff's Preliminary Response (Doc. #20), pp. 7-8 ("Plaintiff is absolutely clear on the intent, meaning and purpose of exhaustion."). Given this level of familiarity, the Plaintiff should understand that he is required to demonstrate his exhaustion of all available administrative remedies. See Brown, 212 F.3d at 1207; Rivera v. Allin, 144 F.3d 719, 731 (11th Cir. 1998). The Plaintiff asserted instead that "the *defendant* has the burden of proving and pleading that such exhaustion did *not* occur." Plaintiff's Preliminary Response, p. 8 (emphasis added). This is not the rule in the Eleventh Circuit. See Alexander v. Hawk, 159 F.3d 1321, 1326-27 (11th Cir. 1998); Rivera, 144 F.3d at 731. In Steele v. Federal Bureau of Prisons, 355 F.3d 1204 (10th Cir. 2003), the Tenth Circuit concluded that "§ 1997e(a) imposes a pleading requirement on the *prisoner*" and cited the Eleventh Circuit Court of Appeals' decision in Rivera, supra at 731, in support of the notion that a complaint which fails to adequately aver

exhaustion of remedies is equivalent to a complaint which fails to state a claim for relief.  Steele, 355 F.3d at 1210 (emphasis added).

Contrary to the Plaintiff's assertion, his two letters to Warden Roberts, mailed more than two months *after* he was confined at the Elmore County Jail, do not constitute "grievances"; however, even if they are deemed "grievances," their issuance by the Plaintiff – without more – does not constitute proper and complete exhaustion of all administrative remedies.  The Plaintiff concedes that he did not submit or attempt to submit a grievance while he was incarcerated at the Elmore County Jail.  See Complaint at ¶ 4 ("Plaintiff was in custody at the Elmore County Jail[] for a twenty four (24) hour period, so there was no possible way to exercise 'administrative remedies'.").  In his first letter to Warden Roberts, dated May 8, 2006, the Plaintiff stated "that such administrative remedy exhaustion as required is irrelevant."  Plaintiff's Exhibit C, p. 1.  Fifteen (15) days later, on May 23, 2006, the Plaintiff composed his second and final letter to Warden Roberts in which he informed her that "[t]his letter will serve as my final contact to you."  Plaintiff's Exhibit D (letter to Warden Roberts dated May 23, 2006).  The Plaintiff's letter concluded with a warning to Warden Roberts that "[f]ailure to respond with a proposed settlement, postmarked[] on or before[] Thursday, June 08, 2006, will waive your opportunity to resolve this matter amicably."  Id.

According to the United States Department of Justice's Standards for Inmate Grievances, cited by the Plaintiff in his Response, "[i]n all instances grievances must be processed from initiation to final disposition within 180 days, inclusive of all extensions."  28 C.F.R. § 40.7(e) (West 2006).[2]  After sending his letters to Warden Roberts, the Plaintiff clearly did ***not*** wait for a

---

[2] The failure of an administrative grievance procedure to meet or exceed federal standards for such programs does not excuse an inmate's decision not to exhaust all available administrative remedies.  See Porter, 534 U.S. at 524 ("All 'available' remedies must now be exhausted; those remedies *need not* meet federal standards, nor must they be 'plain, speedy, and effective'.") (emphasis added).

response from her – an important step toward exhausting available administrative remedies – before filing his action on July 26, 2006. See Pri-Har v. Corrections Corp. of America, 154 Fed. Appx. 886, 888-89 (11th Cir. 2005) ("Because an administrative remedy does not have to be speedy, the absence of a time frame in which prison officials must respond to grievances does not *per se* satisfy the exhaustion requirement of § 1997e(a)"); Vaden v. Summerhill, 449 F.3d 1047, 1050 (9th Cir. 2006) (adopting the holding of the Seventh Circuit in Ford v. Johnson, 362 F.3d 395, 400, that "[t]he complaint is 'brought' by the prisoner when he submits it to the court. Accordingly, the prisoner must have entirely exhausted administrative remedies by this point."). In fact, the Plaintiff waited less than *one-half* of that 180-day period before filing his action (i.e., only seventy-nine (79) days elapsed between first letter, dated May 8, 2006, and Complaint filed on July 26, 2006).  As a result, he cannot be said to have properly and completely exhausted all available administrative remedies.  See Porter, 534 U.S. at 524 ("All 'available' remedies must now be exhausted; those remedies need not meet federal standards, nor must they be 'plain, speedy, and effective'."); Johnson, 418 F.3d at 1157-58 (holding that an untimely grievance does not satisfy the PLRA's exhaustion requirement); Harper v. Jenkin, 179 F.3d 1311, 1312 (11th Cir. 1999) (dismissing § 1983 claim because the inmate did not appeal the denial of the grievance, thus failing to give the state a full chance to hear the grievance); Freeman v. Francis, 196 F.3d 641, 645 (6th Cir. 1999) (inmate did not exhaust all available remedies where he made some attempts to comply with the grievance procedure, but then filed a federal complaint before completing all stages of grievance process); Wright v. Morris, 111 F.3d 414, 417 (6th Cir. 1997) (prisoner filed an initial grievance, but failed to appeal the denial of this grievance through the entire process); Jordan v. Miami-Dade County, 439 F. Supp. 2d 1237, 1241-42 (S.D. Fla. 2006)

(dismissing inmate's suit for failure to exhaust administrative remedies where inmate waited more than six months after incident to submit his grievance).

Despite the fact that the Plaintiff is no longer housed at the Elmore County Jail, he was still required to properly and completely exhaust all administrative remedies. See Ruggiero v. County of Orange, 467 F.3d 170, 176 (2d Cir. 2006) (holding that prisoner's transfer to another facility did not excuse his failure to exhaust administrative remedies). Even if this Court is convinced that the Plaintiff's exhaustion of available remedies is futile or moot at this point, dismissal of the instant action is mandatory if the Court determines that all available administrative remedies were not exhausted. See Alexander, 159 F.3d at 1326-27 ("Since exhaustion is now a pre-condition to suit, the courts cannot simply waive those requirements where they determine they are futile or inadequate. Such an interpretation would impose an enormous loophole in the PLRA, which Congress clearly did not intend."). Of course, given that the Plaintiff initiated his suit against Warden Roberts without completely exhausting all available remedies, he cannot now be granted leave to exhaust such remedies. See Porter, 534 U.S. at 525 (The PLRA's exhaustion requirement was intended by Congress to "afford[] corrections officials time and opportunity to address complaints internally *before* allowing the initiation of a federal case.") (emphasis added); Miller v. Tanner, 196 F.3d 1190, 1193 (11th Cir. 1999) ("An inmate incarcerated in a state prison, thus, must first comply with the grievance procedures established by the state department of corrections *before* filing a federal law-suit under section 1983.") (emphasis added); McKinney v. Carey, 311 F.3d 1198, 1199-2101 (9th Cir. 2002) ("The Courts of Appeals for the First, Second, Third, Seventh, Tenth, Eleventh, and D.C. circuits have held that § 1997e(a) requires exhaustion *before* the filing of a complaint and that a prisoner does not comply with this requirement by exhausting available remedies during the course of the

litigation.") (emphasis added); Ford v. Johnson, 362 F.3d 395, 398 (7th Cir. 2004) ("Some persons are bound to do exactly what Ford did – to declare that the administrative process is irrelevant once suit begins.  To prevent this subversion of efforts to resolve matters out of court, it is essential to keep the courthouse doors closed until those efforts have run their course.").

The Plaintiff's assertion that he was not provided an inmate handbook while confined at the Elmore County Jail is completely without merit and has no bearing on his failure to file a grievance during his incarceration.  In particular, he does not allege that he was unaware of or did not understand the inmate grievance procedure at the Elmore County Jail due to his alleged failure to receive an inmate handbook.  In light of the Plaintiff's prior incarceration, he was no doubt well aware of the general nature and operation of the facility's inmate grievance procedure.  Since the Plaintiff did not allege that his purported failure to receive an inmate handbook was associated, in any logical way, with his failure to file a grievance at the Elmore County Jail, this reference by the Plaintiff is of no significance.  See Ruggiero, 467 F.3d at 178 (rejecting prisoner's argument that defendant-appellants should be estopped from raising failure to exhaust as a defense where prisoner claimed he did not receive an inmate handbook because, "[w]hether or not Ruggiero actually possessed the handbook, he nowhere claims that he was unaware of the grievance procedures contained within it or that he did not understand those procedures.").

The Plaintiff's argument in his Preliminary Response that Miller v. Norris, 247 F.3d 736 (8th Cir. 2001), is the "'perfect' case" is seriously flawed.  Although some similarity may exist between the facts of Miller, supra, and those of the instant action, there is at least one substantial reason for distinguishing the two:  the Plaintiff in the case at bar has never suggested, much less established, that he was prevented from utilizing available administrative remedies.  In fact, the

Plaintiff's letters to Warden Roberts compel precisely the opposite conclusion.  See Plaintiff's Exhibit C and Exhibit D.  Assuming, *arguendo*, the Plaintiff was somehow prevented from utilizing administrative remedies while at the Elmore County Jail – which he does not allege, his subsequent correspondence directed to Warden Roberts indicates no reluctance on his part to utilize the administrative remedy process.

Finally, although the Plaintiff addressed certain parts of the PLRA argument in his Responses to Defendant's Special Report, he opted not to respond – in either one of his Responses – to Warden Roberts's discussion of the PLRA's physical injury requirement and the Plaintiff's inability to satisfy it.  As a result, Warden Roberts requests this Court treat Plaintiff's failure to respond to the Defendant's argument regarding the PLRA's physical injury requirement as a concession of that argument to the Defendant.[3]  See Road Sprinkler Fitters Local Union No. 669 v. Indep. Sprinkler Corp., 10 F.3d 1563, 1568 (11th Cir. 1994) (The District Court "could properly treat as abandoned a claim alleged in the complaint but not even raised as a ground for summary judgment."); Jones v. Electronic Data Systems Corp., 2006 WL 3742202, *1 (M.D. Ala. 2006) (treating as abandoned all claims other than the two to which the plaintiff responded in her response to defendant's motion for summary judgment); Hogan v. City of Montgomery, 2006 WL 3052997, *4 (M.D. Ala. 2006) (treating as abandoned claims that plaintiff failed to address in his response to defendant's motion for summary judgment); Drakeford v. Alabama Co-op. Extension System, 416 F. Supp. 2d 1286, 1313 (M.D. Ala. 2006) (finding that plaintiff abandoned claim where he "failed to address it at all in his reply brief"); Walton ex rel. R.W. v. Montgomery County Bd. of Educ., 371 F. Supp. 2d 1318, 1324 (M.D. Ala. 2005) (treating plaintiff's failure to advance an argument in opposition to defendant's motion for summary

---

[3] The Plaintiff's inexplicable failure to respond to this and other arguments by the Defendant (discussed herein below) is especially egregious since this Court granted the Plaintiff an additional two months in which to respond to the Defendant's Special Report.

judgment as abandonment of that argument); Beasley v. Conopco, Inc., 273 F. Supp. 2d 1239, 1246 n.2 (M.D. Ala. 2003) (same); O'Gwynn v. City of Foley, 2002 WL 32993824 at *3 n.6 (slip op.) (S.D. Ala. 2002) (presuming plaintiff abandoned potential claim where he did not address it in his summary judgment response). Even if the Court refuses to grant this request by Defendant Roberts, it is clear that the Plaintiff's failure to allege – much less suffer – a requisite physical injury bars his complaint. See Asad v. Crosby, 158 Fed. Appx. 166, 168 n.1 (11th Cir. 2005); Jordan, 439 F. Supp. 2d at 1242 quoting Harris v. Garner, 190 F.3d 1279, 1286 (11th Cir. 1999) (quoting Alexander, 159 F.3d at 1324) (holding that Plaintiff's claims for damages for mental and emotional injuries were barred under § 1997e(e) and concluding that "[p]ermitting Plaintiff to maintain a lawsuit alleging only mental and emotional injuries would circumvent Congress' intent under the PLRA to curtail 'frivolous and abusive prisoner litigation'.").

Neither the Plaintiff's Complaint nor his Responses affirmatively show complete and proper exhaustion of the administrative grievance process at the Elmore County Jail as required by the PLRA. While the Plaintiff may have set out to comply with the prescribed administrative remedy process available at the Elmore County Jail, he ultimately grew tired of that process before completely and properly exhausting it and went swashbuckling his way into federal court. Such impatient, irreverent conduct is precisely what the PLRA was created to curtail. See Porter, 534 U.S. at 525; Miller, 196 F.3d at 1193; McKinney, 311 F.3d at 1199-2101; Ford, 362 F.3d at 398. Most obviously, the Plaintiff's Complaint is prohibited because he has suffered *no* physical injury. See 42 U.S.C. § 1997e(e). For these reasons, the Plaintiff's Complaint is barred and due to be dismissed.

III.    **PLAINTIFF'S CLAIMS AGAINST WARDEN ROBERTS MUST FAIL BECAUSE WARDEN ROBERTS HAD NO PERSONAL INVOLVEMENT IN THE ALLEGED VIOLATIONS OF PLAINTIFF'S RIGHTS.**

In his Responses to Warden Roberts's Special Report, the Plaintiff makes no effort to respond to Warden Roberts's argument that all claims against her must fail because she had no personal involvement in the alleged violation of Plaintiff's rights. At most, the Plaintiff claimed that Warden Roberts "would have had knowledge of the Plaintiff," but stops short of actually describing how the Defendant was personally involved in the alleged violation of his rights. Plaintiff's Response (Doc. #41), p. 5. Consequently, Warden Roberts requests this Court treat Plaintiff's failure to address her lack of personal involvement in the alleged violation of Plaintiff's rights as a concession of that argument to the Defendant. See Road Sprinkler Fitters Local Union No. 669, 10 F.3d at 1568 (The district court "could properly treat as abandoned a claim alleged in the complaint but not even raised as a ground for summary judgment."); Jones, 2006 WL 3742202 at *1 (treating as abandoned all claims other than the two to which the plaintiff responded in her response to defendant's motion for summary judgment); Hogan, 2006 WL 3052997 at *4 (treating as abandoned claims that plaintiff failed to address in his response to defendant's motion for summary judgment); Drakeford, 416 F. Supp. 2d at 1313 (finding that plaintiff abandoned claim where he "failed to address it at all in his reply brief"); Walton ex rel. R.W., 371 F. Supp. 2d at 1324 (treating plaintiff's failure to advance an argument in opposition to defendant's motion for summary judgment as abandonment of that argument); Beasley, 273 F. Supp. 2d at 1246 n.2 (same); O'Gwynn, 2002 WL 32993824 at *3 n.6 (slip op.) (presuming plaintiff abandoned potential claim where he did not address it in his summary judgment response).

In the event the Court declines the foregoing request by Warden Roberts, Warden Roberts alternatively adopts and incorporates, as if fully set out herein, the argument in her Special Report that all of Plaintiff's claims against her must fail because she had no personal involvement in the alleged violation of the Plaintiff's rights. See Special Report (Doc. #16), pp. 11-12.

## IV.    THE PLAINTIFF'S REQUEST FOR INJUNCTIVE AND DECLARATORY RELIEF IS DUE TO BE DENIED AS HE LACKS STANDING TO SEEK SUCH RELIEF AND ALL SUCH REQUESTS ARE MOOT.

As discussed above in the section regarding Warden Roberts' entitlement to Eleventh Amendment immunity, due to the Plaintiff's transfer from the Elmore County Jail to the custody of officials at the Federal Prison Camp – Atlanta, Georgia, on or about February 22, 2006 (where he remains incarcerated), he is no longer subject to the allegedly violative conditions of the Elmore County Jail.  As a result, he lacks standing to seek injunctive and declaratory relief concerning the Elmore County Jail or any of its officers or employees.  See McKinnon, 745 F.2d at 1363 citing Holland, 457 F.2d 802 (recognizing the "general rule…that a prisoner's transfer or release from a jail moots his individual claim for declaratory and injunctive relief"); see also Boxer X, 169 Fed. Appx. at 559 (requested injunctions against prison employees declared moot since plaintiff-prisoner was no longer housed at that prison); Roque, 392 F. Supp. 2d at 386-87 (dismissing as moot prisoner's claims for injunctive relief under ADA).   Therefore, the Plaintiff's request for injunctive and declaratory relief is moot and due to be dismissed.

V.    **THE PLAINTIFF'S FAILURE TO ESTABLISH A GENUINE ISSUE OF MATERIAL FACT AS TO HIS CLAIMS REQUIRES THAT WARDEN ROBERTS BE GRANTED SUMMARY JUDGMENT; ALTERNATIVELY, BECAUSE HER CONDUCT VIOLATED NO CONSTITUTIONAL RIGHT AND NO ASPECT OF HER CONDUCT CROSSED A "BRIGHT LINE" CONTOUR OF CLEARLY ESTABLISHED CONSTITUTIONAL LAW, THE DEFENDANT IS ENTITLED TO QUALIFIED IMMUNITY.**

On a motion for summary judgment, the court should view the evidence in the light most favorable to the nonmovant. Greason v. Kemp, 891 F.2d 829, 831 (11th Cir. 1990). However, a plaintiff "must do more than show that there is some metaphysical doubt as to the material facts." Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986). "[S]ummary judgment shall be granted, 'if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law'." Allen v. Tyson Foods, Inc., 121 F.3d 642, 646 (11th Cir. 1997) quoting Fed. R. Civ. P. 56(c). "An issue of fact is 'material' if, under the applicable substantive law, it might affect the outcome of the case….An issue of fact is 'genuine' if the record taken as a whole could lead a rational trier of fact to find for the nonmoving party." Hickson Corp. v. Northern Crossarm Co., Inc., 357 F.3d 1256, 1259-60 (11th Cir. 2004) citing Allen, 121 F.3d at 646 (citing Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986)). "A reviewing court need not 'swallow plaintiff's invective hook, line and sinker; bald assertions, unsupportable conclusions, periphrastic circumlocutions, and the like need not be credited'." Marsh v. Butler County, 268 F.3d 1014, 1036 n.16 (11th Cir. 2001) (en banc) quoting Massachusetts School of Law v. American Bar, 142 F.3d 26, 40 (1st Cir. 1998).

To the extent the arguments set out already in Warden Sue Roberts's Special Report and Reply do not mandate dismissal of the claims against Warden Sue Roberts, she is nevertheless

entitled to summary judgment and/or qualified immunity to any such claim as the Plaintiff has failed to present a genuine issue of material fact with respect to any allegation and because the Defendant's conduct violated no constitutional right and no aspect of her conduct crossed a "bright line" contour of clearly established constitutional law.

### A.    HIPAA claim.

In neither of his Responses to Defendant Roberts's Special Report did the Plaintiff so much as comment on the argument in the Defendant's Special Report explaining at length why the Plaintiff's attempt to state a claim under the Health Insurance Portability and Accountability Act (HIPAA) is due to be dismissed. Consequently, Warden Roberts requests this Court treat the Plaintiff's failure to respond to her argument concerning the Plaintiff's attempt to state a claim under the HIPAA as an abandonment of that argument. See Road Sprinkler Fitters Local Union No. 669, 10 F.3d at 1568 (The district court "could properly treat as abandoned a claim alleged in the complaint but not even raised as a ground for summary judgment."); Jones, 2006 WL 3742202 at *1 (treating as abandoned all claims other than the two to which the plaintiff responded in her response to defendant's motion for summary judgment); Hogan, 2006 WL 3052997 at *4 (treating as abandoned claims that plaintiff failed to address in his response to defendant's motion for summary judgment); Drakeford, 416 F. Supp. 2d at 1313 (finding that plaintiff abandoned claim where he "failed to address it at all in his reply brief"); Walton ex rel. R.W., 371 F. Supp. 2d at 1324 (treating plaintiff's failure to advance an argument in opposition to defendant's motion for summary judgment as abandonment of that argument); Beasley, 273 F. Supp. 2d at 1246 n.2 (same); O'Gwynn, 2002 WL 32993824 at *3 n.6 (slip op.) (presuming plaintiff abandoned potential claim where he did not address it in his summary judgment response).

In the event this Court declines the foregoing request by Warden Roberts, Warden Roberts alternatively adopts and incorporates, as if fully set out herein, the argument in her Special Report regarding the Plaintiff's attempt to state a claim against her pursuant to the HIPAA. See Special Report (Doc. #16), pp. 17-27.

**B.    Americans with Disabilities Act claim.**

The Plaintiff appeared to argue that he is a qualified handicapped person and that his receipt of a designated food tray and water cooler constituted a violation of the Americans with Disabilities Act (ADA). See Plaintiff's Preliminary Response (Doc. #20), p. 5. However, other than that passing assertion and a reference to Pennsylvania Dep't of Corrections v. Yeskey, 524 U.S. 206 (1998) and Bragdon v. Abbott, 524 U.S. 624 (1998), the Plaintiff made no attempt in his Responses to rebut the Defendant's argument concerning the ADA. Therefore, Warden Roberts requests this Court treat Plaintiff's failure to address the Defendant's argument regarding the ADA as an abandonment of that argument. See Road Sprinkler Fitters Local Union No. 669, 10 F.3d at 1568 (The district court "could properly treat as abandoned a claim alleged in the complaint but not even raised as a ground for summary judgment."); Jones, 2006 WL 3742202 at *1 (treating as abandoned all claims other than the two to which the plaintiff responded in her response to defendant's motion for summary judgment); Hogan, 2006 WL 3052997 at *4 (treating as abandoned claims that plaintiff failed to address in his response to defendant's motion for summary judgment); Drakeford, 416 F. Supp. 2d at 1313 (finding that plaintiff abandoned claim where he "failed to address it at all in his reply brief"); Walton ex rel. R.W., 371 F. Supp. 2d at 1324 (treating plaintiff's failure to advance an argument in opposition to defendant's motion for summary judgment as abandonment of that argument); Beasley, 273 F. Supp. 2d at 1246 n.2 (same); O'Gwynn, 2002 WL 32993824 at *3 n.6 (slip op.) (presuming

plaintiff abandoned potential claim where he did not address it in his summary judgment response).

In the event this Court declines the foregoing request of Warden Roberts to treat the Plaintiff's ADA allegations as abandoned, the Defendant has summarized below the principal reasons that the Plaintiff's ADA allegations are due to be dismissed.  As discussed in Warden Roberts's Special Report, there is ***no*** individual capacity liability under Title II of the ADA.  See Special Report, pp. 28-29; Badillo v. Thorpe, 158 Fed. Appx. 208, 211 (11th Cir. 2005) citing Garcia v. S.U.N.Y. Health Services Center of Brooklyn, 280 F.3d 98, 107 (2d Cir. 2001) ("To the extent that Badillo seeks to hold Benefiel personally liable, there is no individual capacity liability under Title II of the ADA or RA."); Dukes v. Georgia, 428 F. Supp. 2d 1298, 1322 n.5 (N.D. Ga. 2006) ("Only Defendant Coweta County can be liable for any alleged violations as there is no individual liability under either the ADA or Rehabilitation Act.") (citation omitted). Therefore, the Plaintiff's attempt to state a claim against Warden Roberts in her individual capacity for an alleged violation of rights arising under the ADA is due to be dismissed.

Any attempt by the Plaintiff to state a claim against Warden Roberts in her official capacity for violation of rights arising under the ADA – if not barred by Eleventh Amendment immunity – is nevertheless due to be dismissed for failure of the Plaintiff to establish the elements necessary to state a claim under Title II of the ADA.  "To state a claim under Title II of the ADA, a Plaintiff must allege: (1) that he is a 'qualified individual with a disability'; (2) that he was 'excluded from participation in or…denied the benefits of the services, programs, or activities of a public entity' or otherwise 'discriminated [against] by such entity'; (3) 'by reason of such disability'."  Shotz v. Cates, 256 F.3d 1077, 1079 (11th Cir. 2001) citing 42 U.S.C. § 12132.  As previously noted, the Plaintiff has failed to satisfy the first element – "that he is a

'qualified individual with a disability'." Id.  His failure to satisfy the first element is not

necessarily due to a lack of adequate legal authority as much as it is due to his failure to establish

that he has a bona fide disability through admissible evidence (e.g., medical records).  To this

point, the Plaintiff has merely alleged that he has Human Immunodeficiency Virus (HIV) and/or

Acquired Immune Deficiency Syndrome (AIDS).  See, e.g., Plaintiff's Complaint ("Statement of

Claim") (Doc. #1-1), ¶ 17; Plaintiff's Preliminary Response (Doc. #20), p. 5.  At the summary

judgment stage, the Plaintiff's bare allegations are insufficient to satisfy his burden.  See Ellis v.

England, 432 F.3d 1321, 1326 (11th Cir. 2005) citing Bald Mountain Park, Ltd. v. Oliver, 863

F.2d 1560, 1563 (11th Cir. 1989) ("mere conclusions and unsupported factual allegations are

legally insufficient to defeat a summary judgment motion").

Similarly, the Plaintiff has not satisfied the second element necessary to state a claim

under Title II of the ADA – "that he was 'excluded from participation in or…denied the benefits

of the services, programs, or activities of a public entity' or otherwise 'discriminated [against] by

such entity'."  Shotz, 256 F.3d at 1079 citing 42 U.S.C. § 12132.  The Plaintiff has yet to come

forward with evidence "that he was 'excluded from participation in or…denied the benefits of

the services, programs, or activities of' [the Elmore County Jail] or otherwise 'discriminated

[against] by'" Warden Roberts.  Id.  To the extent the Plaintiff was excluded from participation

in or denied services, programs, or activities available at the Elmore County Jail – something he

does not allege, such exclusion or denial was imposed by his fellow *inmates*, not Warden

Roberts.  Likewise, any discrimination experienced by the Plaintiff originated with other

*inmates*, not Warden Roberts.  See Higdon v. Jackson, 393 F.3d 1211, 1220 (11th Cir. 2001) (the

Eleventh Circuit Court of Appeals "has repeatedly stated that the civil rights laws were not

intended to be a 'civility code'.").  Jails and prisons are not known as hospitable places, nor are

they known as a refuge for well-mannered individuals.  See Jones v. North Carolina Prisoners'
Labor Union, 433 U.S. 119, 132 (1977) citing Wolff v. McDonnell, 418 U.S. 539, 561-562
(1974) ("Prison life, and relations between the inmates themselves and between the inmates and
prison officials or staff, contain the ever-present potential for violent confrontation and
conflagration.").  For these reasons, the Plaintiff has failed to satisfy the second element.

Finally, the Plaintiff has not satisfied the third element necessary to state a claim under
Title II of the ADA – that his alleged disability was the reason "that he was 'excluded from
participation in or…denied the benefits of the services, programs, or activities of' [the Elmore
County Jail] or otherwise 'discriminated [against] by'" Warden Roberts.  Id.  As discussed
immediately above, the Plaintiff has not – and cannot – demonstrate that he was excluded from
participation in or denied the benefits of the services, programs, or activities of the Elmore
County Jail; therefore, logically, he cannot prove that his alleged disability was the reason he
was excluded from participation in or denied the benefits of the services, programs, or activities
of the Elmore County Jail if he has not proven that he was, in fact, excluded from participation or
denied certain benefits.  Assuming, arguendo, the Plaintiff is said to have established "that he
was 'excluded from participation in or…denied the benefits of the services, programs, or
activities of' [the Elmore County Jail] or otherwise 'discriminated [against] by'" Warden
Roberts, he still has not satisfied – and cannot satisfy – the third element necessary to state a
claim under Title II of the ADA.

In his most recent Response to Defendant Roberts's Special Report, the Plaintiff argued
that he "was placed in red medical scrubs solely because of his illness, in an effort to identify
him as 'contagious' and to alienate him from his fellow inmates."  Plaintiff's Response (Doc.
#41), pp. 2-3.  Significantly, the Plaintiff does not contend that Defendant Roberts instructed him

to don red medical scrubs, nor does he insist that she was present when he was booked into the Elmore County Jail. Moreover, as previously discussed, Sheriff Bill Franklin – not Warden Roberts – is responsible for promulgating policies governing the Elmore County Jail. See Turquitt v. Jefferson County, Ala., 137 F.3d 1285, 1289 (11th Cir. 1998) ("Under the Alabama Code, the sheriff has control over the inmates of the jail, the employees of the jail, and the jail itself."); Lancaster v. Monroe County, Ala., 116 F.3d 1419, 1428 (11th Cir. 1997) (recognizing that, "in running a jail and seeing to the welfare of jail inmates, an Alabama sheriff acts as the final policymaking authority"); see also Pembaur v. City of Cincinnati, 475 U.S. 469, 106 S. Ct. 1292, 1300 n. 11, 89 L.Ed.2d 452 (1986) (discussing City of Oklahoma City v. Tuttle, 471 U.S. 808, 105 S. Ct. 2427, 85 L.Ed.2d 791 (1985), and saying that single incident of unconstitutional conduct by nonpolicymaking official is insufficient to show that the "unconstitutional act was taken *pursuant* to a municipal policy"); Marsh, 268 F.3d at 1036-37 (allegation of single allegedly unconstitutional act, with no mention of a pattern of past wrongs, was insufficient to state claim against sheriff); Caldwell v. City of Elwood, 959 F.2d 670 (7th Cir. 1992) (explaining that allegation of single incident does not support reasonable inference of policy or custom).

Warden Roberts cannot be held liable for any alleged violation of the Plaintiff's rights under the ADA for multiple reasons. First, the Plaintiff has not stated a claim for a violation under the ADA. Second, to the extent the Plaintiff attempts to impose liability on Warden Roberts because of a policy she allegedly enforced or established, such an attempt must fail since the allegation of a single incident of purportedly unconstitutional conduct by a nonpolicymaking official is insufficient to show that the "unconstitutional act was taken *pursuant* to a municipal policy"; not to mention, she is not the policymaker with respect to the Elmore County Jail.

Pembaur, 475 U.S. at 482 n.11.  Finally, the Plaintiff does not allege that Warden Roberts was present during his booking or that she was directly responsible for any particular aspect of it.

The Plaintiff's attempt to state a claim under Title II of the ADA against Warden Roberts in her official capacity fails and is due to be dismissed.  As a result of the Plaintiff's failure to satisfy even one of the three elements necessary to state a claim under Title II of the ADA, and because of the lack of evidence produced by the Plaintiff with respect to this allegation, Defendant Roberts is entitled to summary judgment and/or qualified immunity[4] as to this claim.

### C.    Cruel & Unusual Punishment claim.

Like most of the allegations advanced in his Complaint, the Plaintiff did not discuss, in either of his Responses, Defendant Roberts's argument in her Special Report regarding the Plaintiff's attempt to state a claim for violation of the Eighth Amendment's guarantee against cruel and unusual punishment.  As a result, Warden Roberts requests this Court treat Plaintiff's failure to respond to her argument regarding the Plaintiff's attempt to state a claim for violation of the Eighth Amendment's guarantee against cruel and unusual punishment as an abandonment of that argument.  See Road Sprinkler Fitters Local Union No. 669, 10 F.3d at 1568 (The district court "could properly treat as abandoned a claim alleged in the complaint but not even raised as a ground for summary judgment."); Jones, 2006 WL 3742202 at *1 (treating as abandoned all claims other than the two to which the plaintiff responded in her response to defendant's motion for summary judgment); Hogan, 2006 WL 3052997 at *4 (treating as abandoned claims that plaintiff failed to address in his response to defendant's motion for summary judgment); Drakeford, 416 F. Supp. 2d at 1313 (finding that plaintiff abandoned claim where he "failed to address it at all in his reply brief"); Walton ex rel. R.W., 371 F. Supp. 2d at 1324 (treating

---

[4] For additional discussion of Defendant Roberts' entitlement to qualified immunity to the Plaintiff's ADA allegations, see Defendant Roberts's Special Report (Doc. #16) at pages 27-34.

plaintiff's failure to advance an argument in opposition to defendant's motion for summary judgment as abandonment of that argument); Beasley, 273 F. Supp. 2d at 1246 n.2 (same); O'Gwynn, 2002 WL 32993824 at *3 n.6 (slip op.) (presuming plaintiff abandoned potential claim where he did not address it in his summary judgment response).

In the event this Court declines the foregoing request by Warden Roberts, Warden Roberts alternatively adopts and incorporates, as if fully set out herein, the argument in her Special Report regarding the Plaintiff's attempt to state a claim against her for violation of the Eighth Amendment. See Special Report (Doc. #16), pp. 34-38.

## VI. PLAINTIFF'S REQUEST FOR PUNITIVE DAMAGES IS DUE TO BE STRICKEN.

The Plaintiff's request for punitive damages is due to be stricken. Absent waiver, which is not present or alleged in this action, claims for punitive damages pursuant to 42 U.S.C. § 1983 are barred by the Eleventh Amendment to the United States Constitution as the award would, in effect, be one against the state as this Defendant is a state official. See City of Newport v. Fact Concerts, 453 U.S. 247 (1981). The award of punitive damages against the State of Alabama is similarly barred by statute. See Ala. Code § 6-11-26 (1975). Warden Roberts is an executive officer of the State, and a suit against her is, in essence, a suit against the State of Alabama. Thus, the Plaintiff's claim for punitive damages against Warden Roberts is due to be dismissed. See also Davis, 158 F.3d at 1346 (concluding that "much if not all of Congress's evident intent would be thwarted if prisoners could surmount § 1997e(e) simply by adding a claim for punitive damages").

## CONCLUSION

The Plaintiff's failure to come forth with any admissible evidence in response to Warden Roberts's Special Report, combined with the Plaintiff's failure to rebut the arguments presented

by Defendant Roberts's Special Report and inability to overcome her entitlement to qualified immunity, require that all of the Plaintiff's claims be dismissed.  First, the Plaintiff misconstrued well-settled authority regarding the nature of Eleventh Amendment immunity available to an official such as Warden Roberts; thus, the Eleventh Amendment precludes all claims against Defendant Roberts in her official capacity.  Second, the PLRA bars the instant complaint as the Plaintiff failed to demonstrate his exhaustion of all administrative grievance procedures available to him at the Elmore County Jail or, alternatively, why he could not exhaust all such administrative procedures.  The Complaint is additionally barred by the PLRA because the Plaintiff never alleged – much less established – a physical injury suffered by him, nor did he respond to Defendant's argument concerning such omission.

Next, the Plaintiff simply did not address, in either of his Responses to the Defendant's Special Report, the Defendant's discussion of (1) the fact that she was not personally involved in any alleged violation(s) of the Plaintiff's rights, (2) the reasons the Plaintiff's attempt to state a claim under the HIPAA must fail, (3) the reasons the Plaintiff's attempt to state a claim under the ADA must fail, or (4) the reasons the Plaintiff's attempt to state a claim under the Eighth Amendment must fail.  Finally, and perhaps most importantly, the Plaintiff neglected to provide admissible evidence to counter the competent evidence supplied by Warden Roberts in regard to Plaintiff's claims.  As a result, all of Plaintiff's claims against Warden Roberts are due to be dismissed.

RESPECTFULLY SUBMITTED this the ___23rd___ day of January, 2007.

s/ C. Richard Hill, Jr.
**C. RICHARD HILL, JR. (HIL045)**
**DANIEL D. FORDHAM (FOR055)**
Attorneys for Defendant, Jail Warden Sue Roberts
WEBB & ELEY, P.C.
7475 Halcyon Pointe Drive (36117)
Post Office Box 240909
Montgomery, Alabama  36124
Telephone:  (334) 262-1850
Fax:  (334) 262-1889
E-mail: rhill@webbeley.com

## CERTIFICATE OF SERVICE

I hereby certify that on this the ___23rd___ day of January, 2007, I electronically filed the Defendant's Reply to Plaintiff's Response to Defendant's Special Report with the Clerk of the Court using the CM/ECF system, and that I have mailed by United States Mail, postage prepaid, to the following non-CM/ECF participant:

Jeremiah W. Green
Federal Prison Camp – Atlanta
Post Office Box 150160
Atlanta, Georgia 30315-0160

s/C. Richard Hill, Jr.
**OF COUNSEL**